## BARRY *v.* EDMUNDS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

Argued January 7, 8, 1886.—Decided February 1, 1886.

A suit cannot properly be dismissed by a Circuit Court of the United States as not substantially involving a controversy within the jurisdiction of the court, unless the facts when made to appear on the record, create a legal certainty of that conclusion.

Where exemplary damages beyond the sum necessary to give a Circuit Court of the United States jurisdiction are claimed in an action for a malicious trespass, the court should not dismiss the case for want of jurisdiction simply because the record shows that the actual injury caused to the plaintiff by the trespass was less than the jurisdictional amount.

It is settled in this court that in an action for a trespass accompanied with malice, the plaintiff may recover exemplary damages in excess of the amount of his injuries, if the *ad damnum* is properly laid.

This was an action of trespass brought by the plaintiff in error. The declaration set out the cause of action as follows:

"Robert P. Barry, plaintiff, complains of E. G. Edmunds, defendant, of a plea of trespass on the case, for this, to wit: that the plaintiff is a citizen and resident of Fauquier County, Virginia; that he owns property in said county, and that he was duly and lawfully assessed with the sum of fifty-six dollars and thirty-four cents as taxes upon said property, to be paid to the State of Virginia for the year 1884; that said taxes, by the laws of said State, were not leviable for prior to the first day of December, 1884, but if not paid prior to said last-named date were leviable for, after said date.

" That, by a further provision of the laws of said State, if the taxes assessed for the year 1884 are not paid on or before the first day of December, 1884, the person owing the same becomes liable to pay, in addition thereto, a further sum of five per centum upon the amount of the tax so due.

" That the plaintiff did not pay his said tax prior to the first day of December, 1884, and thereby became liable to pay an additional sum of two dollars and eighty-one cents, making the plaintiff thus liable after the 1st day of December, 1884, for the sum of ($59.15) fifty-nine dollars and fifteen cents.

" That the defendant is the treasurer of Fauquier County, in the State of Virginia, and as such it is made his duty, by the laws of Virginia, to collect all taxes due to the said State by residents of said county; that in the month of June, 1885, the plaintiff tendered to the defendant, in payment of his said taxes, fifty-nine $\frac{15}{100}$ dollars, in coupons and lawful money of the United States, the two together constituting the full amount due for said taxes; that each one of the said coupons was cut from a bond issued by the State of Virginia, under the authority of the provisions of an act of her General Assembly, approved March 28, 1879, entitled 'An act to provide a plan of settlement of the public debt;' that each one bore upon its face the contract of the State of Virginia that it should be received in payment of all taxes, debts, and demands due to said State. and that each one was due and past maturity.

"That the defendant refused the said coupons and money in

payment of the plaintiff's taxes; that he refused to receive the same in payment of his taxes because an act of the General Assembly of the State of Virginia, approved January 26, 1882, entitled ' An act to provide for the more efficient collection of the revenue, to support government, maintain the public schools, and to pay interest upon the public debt,' forbade him to receive them, and because another act of the General Assembly of said State, approved January 14, 1882, entitled ' An act to prevent frauds upon the Commonwealth and the holders of her securities in the collection and disbursement of revenue,' likewise forbade him to receive them.

"That on the — day of June, 1885, the defendant, unlawfully, maliciously, and against the will of the plaintiff, entered upon the premises of the plaintiff, situated and being in the county of Fauquier, Virginia, with force and arms, and against the will of the plaintiff, and, acting as said treasurer aforesaid, did levy on and forcibly seize and carry away valuable personal property belonging to the said plaintiff, to wit, one valuable horse, of the value of one hundred and twenty-five dollars, for the purpose of selling the same, and thus compelling the plaintiff to pay his taxes in another medium than that already offered by the plaintiff.

" That on the day when the defendant so levied on the plaintiff's property, and before he did so, the plaintiff again tendered to the defendant the said coupons and money in payment of his said taxes, but the defendant refused to receive the same in payment thereof; and the plaintiff was always ready and willing up to the moment of said levy to deliver to the defendant the said coupons and money in payment of his said taxes, but the defendant always refused so to receive the same.

" That the defendant levied on the plaintiff's said property and carried the same away, because the 18th section of the act of the General Assembly of Virginia, approved April 1, 1879, which is chapter 60 of the acts of the special session of 1879, commanded him so to levy upon the plaintiff's property, notwithstanding said tender.

" That, by reason of the contract of the State of Virginia set forth upon the face of said coupons, the plaintiff had a right to

pay his said taxes with said coupons and money, and after he tendered the same to said treasurer his said taxes were, in point of law, paid and extinguished, and he held the said coupons and money for the defendant as his agent in that behalf thereafter.

"That, when the defendant so levied upon and seized the plaintiff's property, he knew that the Supreme Court of the United States had decided at its October Term, 1884, in the case of *Poindexter* v. *Greenhow*, that a tender by a tax-payer of the State's tax-receivable coupons, such as those tendered by the plaintiff in payment of taxes due the State, pays and extinguishes said tax, and that any and all laws of said State commanding her treasurers to refuse the same, and commanding them to levy after said tender, are repugnant to the Constitution of the United States, and are, therefore, null and void.

"That the defendant, so knowing the law, levied on and seized the plaintiff's property in contempt of and defiance of the law, and with the deliberate intention of defying the Constitution of the United States and the judicial powers thereof.

"That there exists in the State of Virginia a very great political party, which comprises a majority of the voters in said State, which has for its aims and purpose to enact laws that will defeat and destroy the effect of the judgment of the Supreme Court of the United States in said case of *Poindexter* v. *Greenhow*, and will defeat and destroy the protection afforded by the Constitution of the United States to tax-payers who seek to pay their taxes with said tax-receivable coupons.

"That said party, being in control of the Legislature of the said State, has enacted a great number of statutes which are intended to have that effect, and it openly proclaims that it intends to enact all other and further statutes which shall be necessary to make it impossible for tax-payers to pay their taxes with said coupons.

"That the defendant is a member of said political party, and sympathizes with and shares in its aims and purposes, and actively co-operates in every way in his power in every attempt to make it impossible for tax-payers to pay taxes due to said State with said coupons.

"That, when he refused to receive said coupons in payment

of plaintiff's taxes, and when he levied on plaintiff's property as aforesaid, he did it for the purpose of aiding and assisting his said political party in its attempts to defy and nullify the Constitution of the United States.

"That he intended thereby to intimidate the plaintiff and make him afraid to rely upon the Constitution of the United States and the judicial power thereof for protection in those rights guaranteed to the plaintiff by said Constitution.

"That he intended to make an example of the plaintiff, and thereby deter him and all others from relying upon the Constitution of the United States and the judicial power thereof for the protection in those rights guaranteed by the said Constitution; that in contempt of and defiance of the said Constitution and said judicial power the defendant made public advertisement in many parts of the county of Fauquier that he had levied on and seized plaintiff's property, because plaintiff was delinquent as a tax-payer, and that he would sell the same at public auction, on a day named, at the court-house of said county; that on the day named he did expose the said property to sale at public auction, at said court-house, in the presence of many of plaintiff's neighbors, friends, and fellow-countrymen, and publicly proclaimed that plaintiff was a defaulter and delinquent tax-payer; that by reason thereof plaintiff's credit and standing were greatly injured and his feelings cruelly wounded and mortified.

"That the defendant well knew when he made said levy and sale that they were forbidden by the Constitution of the United States, but he did so trusting and believing that his said political party would enact statutes of its State of Virginia that would shield and protect him from all harm; that he made said levy and sale maliciously and with the purpose and intent to trample on the plaintiff's rights under the law and do him all the injury in his power.

"And the said plaintiff further says that he is a citizen of Fauquier County, Virginia; that he owns property in said county, and that he was duly and lawfully assessed upon said property with the sum of fifty-six dollars thirty-four cents, as taxes to be paid to the State of Virginia for the year 1884,

which taxes, by the laws of Virginia, were not leviable for prior to the 1st day of December, 1884, but the same, if not paid prior to said last-named date, were leviable for after the said date; that by a further provision of the laws of said State, if the taxes assessed for the year 1884 are not paid on or before the 1st day of December, 1884, the person owing the same becomes liable to pay in addition thereto a further sum of five per centum upon the amount of the tax so due; that the plaintiff did not pay his said tax prior to the 1st day of December, 1884, and thereby became liable to pay an additional sum of $2.81, making the plaintiff thus liable after December 1, 1884, for the sum of $59.15; that the defendant is the treasurer of Fauquier County, in the State of Virginia, and as such it is made his duty, by the laws of Virginia, to collect all taxes due to the said State by residents and owners of property in said county.

"That in the month of June the plaintiff tendered to the defendant, in payment of his said taxes, coupons for $—— each, and $——, in lawful money of the United States, the two together constituting the sum of $59.15. That each one of said coupons was cut from a bond issued by the State of Virginia, under the authority and provisions of an act of her General Assembly, approved March 28, 1879, entitled 'An act to provide a plan of settlement of the public debt;' that each one bore upon its face the contract of the State of Virginia that it should be received in payment of all taxes and demands due said State, and that each one was overdue and past maturity. That the defendant refused to receive the said coupons and money in payment of the plaintiff's taxes. That he refused to receive the same in payment of his taxes, because an act of the General Assembly of the State of Virginia, approved January 26, 1882, entitled 'An act to provide for the more efficient collection of the revenue, to support government, maintain the public schools, and to pay interest upon the public debt,' forbade him to receive them, and because another act of the General Assembly of the State of Virginia, approved January 14, 1882, entitled 'An act to prevent fraud upon the Commonwealth and the holders of her securities in the collection of

revenue,' likewise forbade him to receive them. That on the —— day of June, in the year eighteen hundred and eighty-five, the defendant, unlawfully and against the will of the plaintiff, entered upon the premises of the plaintiff, situate and being in the county of Fauquier, Virginia, with force and arms, and against the will of the plaintiff, and, acting as said treasurer aforesaid, he levied on and forcibly seized and carried away valuable personal property belonging to the plaintiff, to wit, one horse, to the value of $125.00, for the purpose of sell-ing the same, and thus compelling the plaintiff to pay his taxes in another medium than that already offered by the plaintiff; that on the day when the defendant so levied on the plaintiff's property, and before he did so, the plaintiff again tendered to the defendant the said coupons and money in payment of said taxes, but the defendant refused to receive the same in pay-ment thereof, and the plaintiff was always ready and willing, up to the moment of said levy, to deliver to the defendant the said coupons and money in payment of his said taxes. but the defendant always refused to receive the same.

" That the defendant levied on the plaintiff's said property and carried the same away because the 18th section of the act of the General Assembly of Virginia, approved April 1, 1879, which is chapter 60 of the acts of the special session of 1879, commanded him so to levy upon the plaintiff's property, not-withstanding said tender. That by reason of the contract of the State of Virginia, set forth upon the face of said coupons, the plaintiff had a right to pay his said taxes with said coupons and money, and after he tendered the same to the said treasurer his said taxes were, in point of law, paid and extinguished, and he held the said coupons and money for the defendant as his agent in that behalf thereafter. That when the defendant so levied upon and seized the plaintiff's property he knew that the Supreme Court of the United States had decided, at its October Term, 1884, in the case of *Poindexter* v. *Greenhow*, that a tender by a tax-payer of the State's tax-receivable coupons, such as those tendered by the plaintiff, in payment of taxes due the State, pays and extinguishes said tax, and that any and all laws of said State commanding her treasurer to

refuse the same, and commanding them to levy after said ten-
der, are repugnant to the Constitution of the United States,
and are, therefore, null and void.

"That the defendant, so knowing the law, levied on and
seized the plaintiff's property in contempt of and defiance of
the law, and with the deliberate intention of defying the Con-
stitution of the United States and the judicial power thereof.

"That in contempt of and defiance of the said Constitution
and judicial power the defendant made public advertisement
in many parts of the county of Fauquier that he had levied on
and seized plaintiff's property because plaintiff was delinquent
as a tax-payer, and that he would sell the same at public auc-
tion, on a day named, at the court-house in said county. That
on the day named he did expose the said property to sale at
public auction, at said court-house, in the presence of many of
the plaintiff's neighbors, and friends, and fellow-citizens, and
countrymen, and publicly proclaimed that the plaintiff was a
defaulter and delinquent tax-payer:

"That by reason thereof plaintiff's credit and standing were
greatly injured, and his feelings cruelly wounded and mortified.
That whilst the said defendant was unlawfully and wrongfully
upon the plaintiff's premises, as aforesaid, he did many other
wrongs and injuries to the plaintiff of a malicious nature, by
all which wrongs and injuries the plaintiff has been injured and
damaged six thousand dollars. And therefore he brings his
suit."

To this declaration the defendant filed a plea to the jurisdic-
tion of the Circuit Court, alleging that, as the plaintiff and
defendant were both citizens of the State of Virginia, the courts
of that State had exclusive jurisdiction of the alleged cause of
action.

The record showed the following action and judgment of the
court:

"This cause came on this day to be considered by the court
upon a motion made by the plaintiff to set a day for argument of
a demurrer to the special plea filed herein. Upon consideration
whereof the court is of opinion that this suit does not really and
substantially involve a dispute or controversy properly within

the jurisdiction of this court, for the reason that the amount of taxes due by the plaintiff to the State of Virginia was less than one hundred dollars, and the property levied on and seized by the defendant was worth less than two hundred dollars, and, therefore, that the matter in dispute in this cause does not exceed, exclusive of costs, the sum or value of five hundred dollars ($500).

"And it appearing to the court that this being an action for damages, if the jury should render a verdict for ($500) five hundred dollars damages such verdict would be excessive, and the court would feel compelled to set it aside; the court is further of opinion that this court is, for that reason, also without jurisdiction of this suit.

"The court is, therefore, for each of the aforesaid reasons, of opinion that it is required to dismiss this suit by the act of Congress approved March 3, 1875, 'to determine the jurisdiction of the Circuit Courts of the United States, and to regulate the removal of causes from the State courts, and for other purposes;' and this suit is accordingly hereby dismissed and stricken from the docket of the court, with costs."

The plaintiff below sued out this writ of error to review that judgment. This case was argued with *Chaffin* v. *Taylor, post* 567; *Royall* v. *Virginia, post* 572; and *Sands* v. *Edmunds, post* 585.

*Mr. William L. Royall* and *Mr. Daniel H. Chamberlain* for plaintiff in error. *Mr. James V. Brooke* filed a brief for same.

*Mr. R. A. Ayres* and *Mr. Walter R. Staples* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court: After stating the facts as above reported, he continued:

It is not questioned but that the declaration discloses a cause of action within the jurisdiction of the Circuit Court, if the amount or value of the matter in dispute exceeds five hundred dollars, exclusive of costs, for it is a suit of a civil nature arising under the Constitution of the United States, and therefore within the words of § 1 of the act of March 3, 1875. 18 Stat.

470; *Smith* v. *Greenhow*, 109 U. S. 669; *White* v. *Greenhow*, 114 U. S. 307.

The ground on which the suit was dismissed was, that within the meaning of § 5 of the act of March 3, 1875, it did not " really and substantially involve a dispute or controversy properly within the jurisdiction" of the Circuit Court; and that conclusion was founded on the facts stated in the declaration, that the amount of taxes due by the plaintiff to the State of Virginia was less than one hundred dollars, and the property levied on and seized by the defendant was worth less than two hundred dollars; and on the proposition of law, that it followed from these facts that the matter in dispute did not exceed, exclusive of costs, the sum or value of five hundred dollars, so that a verdict for any amount beyond that would be excessive, and for that reason to be set aside.

The order of the Circuit Court dismissing the cause on this ground is reviewable by this court on writ of error by the express words of the act. In making such an order, therefore, the Circuit Court exercises a legal and not a personal discretion, which must be exerted in view of the facts sufficiently proven, and controlled by fixed rules of law. It might happen that the judge, on the trial or hearing of a cause, would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them. Nothing less than this is meant by the statute when it provides that the failure of its jurisdiction, on this account, "shall appear to the satisfaction of said Circuit Court."

This is quite consistent with what was said in *Smith* v. *Greenhow*, 109 U. S. 669, 671. There the value of the property taken was stated in the declaration to be $100, while the damages for the alleged trespass were laid at $6000, and no circumstances of malice or of special damage were averred. It was said by the court: "We cannot, of course, assume as a matter of law that the amount laid, or a less amount, greater than $500, is not

recoverable upon the case stated in the declaration, and cannot, therefore, justify the order remanding the cause on the ground that the matter in dispute does not exceed the sum or value of $500. But if the Circuit Court had found, as matter of fact, that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case removable under the act of Congress, so that, in the words of the 5th section of the act of 1875 it appeared that the suit 'did not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court,' the order remanding it to the State court could have been sustained."

It is true, indeed, that in some cases it might appear as matter of law, from the nature of the case as stated in the pleadings, that there could not legally be a judgment recovered for the amount necessary to the jurisdiction, notwithstanding the damages were laid in the declaration at a larger sum. In the early case of *Wilson* v. *Daniel*, 3 Dall. 401, 407, decided in this court in 1798, under the judiciary act of 1789, then in force, it was declared, by Chief-Justice Ellsworth, that, "The nature of the case must certainly guide the judgment of the court; and whenever the law makes a rule, that rule must be pursued. Thus, in an action of debt on a bond for £100, the principal and interest are put in demand and the plaintiff can recover no more, though he may lay his damages at £10,000. The form of the action, therefore, gives in that case the legal rule. But in an action of trespass, or assault and battery, where the law prescribes no limitation as to the amount to be recovered and the plaintiff has a right to estimate his damages at any sum, the damage stated in the declaration is the thing put in demand; and presents the only criterion to which, from the nature of the action, we can resort in settling the question of jurisdiction. The proposition, then, is simply this : Where the law gives no rule, the demand of the plaintiff must furnish one; but where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded."

The amount of damages laid in the declaration, however, in cases where the law gives no rule, is not conclusive upon the

question of jurisdiction ; but if upon the case stated there could legally be a recovery for the amount necessary to the jurisdiction, and that amount is claimed, it would be necessary, in order to defeat the jurisdiction since the passage of the act of March 3, 1875, for the court to find, as matter of fact, upon evidence legally sufficient, " that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case" within the jurisdiction of the court. Then it would appear to the satisfaction of the court that the suit " did not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court."

In the present case the Circuit Court has not found, as matter of fact, that the amount of damages stated in the declaration was colorable and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case within the jurisdiction of the court. Its action is not based on evidence of an attempted fraud upon the jurisdiction of the court, but upon the assumption, as matter of law, that upon the face of the declaration no recovery could be legally had of an amount sufficient to make the matter in dispute equal to that required to maintain its jurisdiction.

Such cases, as we have already seen, may exist, where a rule of law, as in certain cases *ex contractu*, in which the amount recoverable is liquidated by the terms of the agreement, fixes the limit of a possible recovery. Such was the case of *Lee* v. *Watson*, 1 Wall. 337, where it appeared "that in the progress of the cause an amendment was made in the amount of damages claimed for the purpose of bringing the case within the appellate jurisdiction of this court." As was said in *Hilton* v. *Dickinson*, 108 U. S. 165, 174, " it is undoubtedly true, that until it is in some way shown by the record that the sum demanded is not the matter in dispute, that sum will govern in all questions of jurisdiction, but it is equally true that, when it is shown that the sum demanded is not the real matter in dispute, the sum shown and not the sum demanded will prevail." In *Bowman* v. *Chicago and Northwestern Railway Co.*, 115 U. S. 611, an amendment was made increasing

the amount demanded as damages, under circumstances that rendered it apparent, as a matter of fact, that it was done merely to give color to the jurisdiction of this court.

No such fact or finding appears on the record in the present case, and the question recurs whether, as matter of strict law, it can be judicially declared that, upon the cause of action stated in the declaration, the plaintiff is precluded from recovering anything in excess of $500 as damages exclusive of costs.

The cause of action stated in the declaration is a wilful and malicious trespass, in seizing and taking personal property, with circumstances of aggravation and averments of special damage. The trespass is alleged to have been committed by the defendant, *colore officii*, under the pretended authority of void process, in open defiance of known law, accompanied by conduct intended to bring the plaintiff into public contempt and odium, and amounting to oppression in office.

It is quite clear that the amount of the taxes alleged to be delinquent, for non-payment of which the seizure was made, is immaterial. It is equally clear that the plaintiff is not limited in his recovery to the mere value of the property taken. That would not necessarily cover his actual, direct, and immediate pecuniary loss. In addition, according to the settled law of this court, he might show himself, by proof of the circumstances, to be entitled to exemplary damages calculated to vindicate his right and protect it against future similar invasions. "It is a well established principle of the common law," said Mr. Justice Grier in *Day* v. *Woodworth*, 13 How. 362, 371, "that, in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offence rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers; but, if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. . . . In actions of trespass, where the injury has been wanton and malicious or gross and outrageous, courts permit juries to add to the measured compensation of

the plaintiff, which he would have been entitled to recover had the injury been inflicted without design or intention, something further by way of punishment or example, which has sometimes been called 'smart money.' This has been always left to the discretion of the jury, as the degree of the punishment to be thus inflicted must depend on the peculiar circumstances of each case." In *The Amiable Nancy,* 3 Wheat. 546, which was the case of a marine tort, Mr. Justice Story spoke of exemplary damages as "the proper punishment which belongs to such lawless misconduct." In *Tracy* v. *Swartwout,* 10 Pet. 80, 95, it was said that "where a ministerial officer acts in good faith for an injury done, he is not liable to exemplary damages;" and this implies its converse, when his acts are not only illegal, but wanton, wilful, malicious, and oppressive. In *Philadelphia, Wilmington & Baltimore Railroad Co.* v. *Quigley,* 21 How. 202, 214, Mr. Justice Campbell said: "Whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations." In *Milwaukee & St. Paul Railway Co.* v. *Arms,* 91 U. S. 489, 493, the rule was said to apply to actions on the case, for injuries arising from the negligence of the defendant. "Redress commensurate to such injuries," said Mr. Justice Davis, delivering the opinion of the court, "should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant and its consequences to the plaintiff; but they are not at liberty to go farther, unless it was done wilfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages." In *Missouri Pacific*

*Railway Co.* v. *Humes*, 115 U. S. 512, 521, Mr. Justice Field said: "It is the duty of every State to provide, in the administration of justice, for the redress of private wrongs; yet the damages which should be awarded to the injured party are not always readily ascertainable. They are in many cases a matter of conjectural estimate, in relation to which there may be great differences of opinion. The general rule undoubtedly is that they should be precisely commensurate with the injury. Yet in England and in this country they have been allowed in excess of compensation whenever malice, gross neglect, or oppression has caused or accompanied the commission of the injury complained of." In the English Court of Common Pleas, it was held, in the case of *Bell* v. *Midland Railway Co.*, 10 C. B. N. S. 287, that, where a railway company had obstructed a siding belonging to an adjoining landowner with a high hand and in violation of his rights under an act of Parliament, exemplary damages might justly be given. And the rule was applied in *Emblem* v. *Myers*, 6 H. & N. 54, against one who negligently and recklessly pulled down buildings on his own land so as to injure his neighbor with a view to make him give up possession. In that case Baron Bramwell said: "If a plaintiff, in his particulars, claimed £500 because the defendant walked over his lawn the jury might award that amount if they thought it was done for the purpose of annoyance and insult." In *Johnson* v. *Hannahan*, 3 Strobhart, 425, the Court of Appeals of South Carolina, in an action of trespass *quare clausum fregit*, where the plaintiff sought to recover damages for an invasion of his close, accompanied, as he alleged, by circumstances of oppression and insult, refused to set aside a verdict for $3000, as excessive, although the actual and mere pecuniary loss, it was shown, did not amount to $20. In *Kolb* v. *Bankhead*, 18 Texas, 228, which was an action of trespass for cutting down and carrying off timber from the land of another, where the defendant had wilfully or by gross negligence cut over his own line on the land of the plaintiff, it was said by the Supreme Court of Texas, that, "in estimating the damages the jury were not confined strictly to mere compensation for the timber cut and removed. It was their right to

look to the particular circumstances of the case, and give such damages as the facts were deemed by them to warrant, and as would, in their judgment, be adequate, not only for compensation, but also for prevention."

It is unnecessary, however, further to multiply authorities on this point. The precedents are indefinite in number, and the application of the rule as uniform as the circumstances of the cases are various. There was clear error in the Circuit Court in its ruling, as matter of law, that there could be no lawful recovery, in such a case as that stated in the declaration, of an amount equal to that which is necessary to support the jurisdiction of the court. The same error was repeated in acting upon the statement, that a verdict, if rendered for that amount, would be excessive and set aside for that reason—a statement which could not, at any rate, be judicially made before such a verdict was in fact rendered. It adds, indeed, to the principal error, if any distinction can be made, that which consists in encroaching upon the province of the jury. For nothing is better settled than that, in such cases as the present, and other actions for torts where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict. In *Whipple* v. *The Cumberland Manufacturing Co.*, 2 Story, 661, 670, Mr. Justice Story well expressed the rule on this subject, that a verdict will not be set aside in a case of *tort* for excessive damages "unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated "— that is, "unless the verdict is so excessive or outrageous," with reference to all the circumstances of the case, "as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them." In no case is it permissible for the court to substitute itself for the jury, and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice, which the jury itself is the appointed constitutional tribunal to award.

The case of *Beardmore* v. *Carrington*, 2 Wilson, 244, was an action of trespass and false imprisonment against the defendants, who were four of the King's messengers in ordinary. They justified the alleged trespass under a warrant of the Earl of Halifax, then one of the principal Secretaries of State, requiring them to arrest the plaintiff as the author of some seditious libels, and to seize his books and papers. There was a verdict for the plaintiff for £1000 damages, and a motion for a new trial on the sole ground that the damages were excessive. The court (Pratt, afterwards Lord Camden, being Lord Chief Justice) said : " Can we say that £1000 are monstrous damages as against him who has granted an illegal warrant to a messenger, who enters into a man's house and prys into all his secret and private affairs, and carries him from his house and business and imprisons him for six days; it is an unlawful power assumed by a great Minister of State; can anybody say that a guinea *per diem* is sufficient damages in this extraordinary case, which concerns the liberty of every one of the King's subjects ; we cannot say the damages of £1000 are enormous." The dignity and value of the right assailed, and the power and authority of the source from which the assault proceeds, are elements to be considered in the computation of damages, if they are to be, not only compensation for the direct loss inflicted, but a remedy and prevention for the greater wrong and injury involved in the apprehension of its repetition. *Huckle* v. *Money*, 2 Wilson, 205.

The section of the act of March 3, 1875, under which the Circuit Court acted in dismissing the present action confers a beneficial authority to be wisely exercised in defeating collusive and fraudulent experiments upon its jurisdiction ; but the discretion it confers is judicial, proceeding upon ascertained facts according to rules of law, and subject to review for apparent errors. For the reasons already given we are not able to uphold its exercise in the present instance, and

*The judgment dismissing the action is accordingly reversed, and the cause is remanded, with directions to take such further proceedings therein as the law requires and in conformity with this opinion.*