## PARAMORE v. MACK SENNETT, Inc.

(District Court, S. D. California, S. D. November 12, 1925.)

1. Literary property ⟐2—Author of literary production has no right in mere name given thereto.

No right is held by author of a literary production in the mere name given to his production, unless production itself is protected by copyright, and is one which has received notoriety with the reading public, and has become identified in public mind by name given it by author.

**2. Copyrights ⚖══56—Author of copyrighted literary production held entitled to damages for and to restrain use of name thereof on motion picture.**

Author of copyrighted literary production, contemplating use of name thereof on his scenario, *held* entitled to damages for and to restrain use thereof attached to a motion picture, though such picture itself depicted none of the incidents of his story, where his production had received notoriety with the reading public, and had become identified in the public mind by the name given it by the author.

**3. Copyrights ⚖══87—Measure of damages, where author deprived of market for scenario by unauthorized use of name to copyrighted literary production, stated.**

Where defendant used name of copyrighted literary production belonging to author on motion picture, thereby depriving author of a market for his scenario with such name, author's damages will be determined by fixing a sale value on the scenario.

**4. Courts ⚖══328(10)—Federal court not deprived of jurisdiction in claim for damages for infringement of copyright, because awarding amount less than federal jurisdictional amount.**

Federal court was not deprived of jurisdiction of claim for damages for infringement of copyright, because awarding plaintiff damages in a sum less than federal jurisdictional amount, since amount sued for in a complaint determines jurisdiction, unless it appears that it is asserted solely to enable party to bring his case in federal court.

In Equity. Suit by E. E. Paramore, Jr., against Mack Sennett, Inc. Decree for plaintiff.

J. W. Paramore, of San Francisco, Cal., and Flint & MacKay, of Los Angeles, Cal., for plaintiff.

Bauer, Wright & Macdonald, of Los Angeles, Cal., for defendant.

JAMES, District Judge. Plaintiff, the author of a literary production published under the title of "The Ballad of Yukon Jake," brings this suit, alleging that the defendant, a moving picture producing company, made and distributed and caused to be exhibited a moving picture under the title of "Yukon Jake," thereby destroying the value of the literary material which was, as plaintiff alleges, adapted to motion picture use. Plaintiff further alleges that, at the time the defendant made the picture under the title of "Yukon Jake," he had prepared for marketing a scenario containing the "story" of "Yukon Jake," entitling it "Yukon Jake, the Killer." His claim is for damages, and for an injunction, and for an accounting of profits.

The poem written by the plaintiff under the title first mentioned was published in a well-known illustrated magazine of national circulation in 1921. It was republished one or more times by the same periodical, in response to requests from the readers, appearing the last time in the year 1923. It was published, also, in 1923 in a bound volume of collected current literary material by a well-known publisher of books and periodicals, and was published in at least one other periodical. The making of these various publications was alleged and proved by the plaintiff, in order to show that his literary production had attained considerable vogue and popularity, identified under the title containing the words "Yukon Jake," which represented the principal character of the poem. The poem was covered by the copyright protecting the contents of the periodical in which it was first published. This copyright was held by the plaintiff under assignment made prior to the date of the occurrence of matters affecting the defendant as alleged in the complaint.

The defendant used the words "Yukon Jake" as the title of a film picture produced by it early in the year 1924. It was admitted on both hands that none of the incidents depicted in the story told by the plaintiff's poem formed any part of the film picture. It was shown in evidence that prior to the release of defendant's film, plaintiff had prepared his scenario and had a promising opportunity to dispose of it to a different motion picture producer, and that the defendant was warned against using the title "Yukon Jake" before its film under that name was actually distributed.

[1, 2] The facts stated warrant a recovery of some amount of damages, if plaintiff possessed in the name "Yukon Jake" a property right which would exclude others from the use of it for motion picture purposes. From all of the authorities which have been cited, it may be concluded, I think, to be the law that no right is held by an author of a literary production in the mere name given to his production, unless the production itself is protected by copyright, and the production is one which has received notoriety with the reading public, and has become identified in the public mind by the name given it by the author. As the author has reserved to him the value of his story and plot for motion picture adaptation, he will also be protected in the right to use the name he has identified his story by, where conditions are such as have been last described. The deduction is that this right to the use of the title will end when the

copyright expires in all cases, but it will not always exist coincident with the copyright.

Plaintiff here satisfied the requirements I have indicated as necessary to protect his right to the exclusive use of the name "Yukon Jake." His contention is, and the probabilities agree with him in that, that the use of the title "Yukon Jake," attached to a motion picture, even though the picture itself depicted none of the incidents of his story, would affect greatly the salability of his scenario. This for the principal reason that the public, familiar with the poem and its story, would be impelled to view any picture exhibited under the title "Yukon Jake" in the belief that it would portray the characters and incidents in the plaintiff's poem; that upon the exhibiting of the defendant's picture, occurring before plaintiff had sold his scenario, there would no longer be the same demand for a second picture under a title containing the words "Yukon Jake," and the marketability of plaintiff's scenario would thus be proportionately destroyed.

The logic of this argument seems to be clear, and the evidence establishes the facts necessary to support it. Even though the defendant had not been apprised, before its picture was actually distributed (the fact is to the contrary), of plaintiff's intention to market a scenario of his poem, it is reasonable to conclude, because of the considerable notoriety which "The Ballad of Yukon Jake" had attained, that the selection of the name by the defendant was prompted by the recollection of some of its staff who had read the poem. Defendant would under such circumstances be bound, I think, to 'keep in view the rights which the author had in his poem and its title, and the damage consequences which might ensue if it made an unauthorized appropriation of the name.

I do not agree with the argument of the defendant that the theme and story of the poem was of such a salacious character as to leave its author without the right to any protection in a court of justice. The poem answers generally to the characterization which the plaintiff has given to it in his complaint, when he describes it as being a satire or burlesque upon then current literature touching life in the Yukon country.

[3] As to the amount of damage that plaintiff may have suffered by reason of being deprived of a market for his scenario, it is not clearly established. There is a wide range in the testimony given by witnesses on the stand as to market values and production possibilities of offered material. So wide was the range as to compel the observation that the witness who testified that the moving picture business is a matter of notion rather than system was stating a fact and not announcing a witticism. There is nothing definitely represented in the evidence from which it can be determined that the scenario of the plaintiff, if pictured on the screen, would have had any unusual popularity with the public. The damages here, in my view, must be found entirely by fixing a sale value on the scenario. The amount cannot be determined with any assurance that it is truly accurate, but must be measured by the reasonable probabilities, considering all of the evidence presented on both sides of the question.

[4] The judgment to be entered will be in favor of the plaintiff for the sum of $2,500. Defendant's counsel, in their brief, have insisted that, if it were found that plaintiff was damaged in a sum less than $3,000, the federal jurisdictional amount, there could be no judgment for any damages. The amount sued for in a complaint determines the jurisdiction, unless it appears that that amount is asserted for the sole purpose of enabling the party to bring his case in the federal court. Barry v. Edmunds, 116 U. S. 560, 6 S. Ct. 501, 29 L. Ed. 729; Scott v. Donald, 165 U. S. 89, 17 S. Ct. 262, 41 L. Ed. 648.