Joan WHITNEY and Alex Kramer,
Plaintiffs,

v.

ROSS JUNGNICKEL, INC., Theodore
Presser Company and Bourne,
Inc., Defendants.

United States District Court
S. D. New York.

Jan. 18, 1960.

Schulman & Stern, New York City, for plaintiffs, John Schulman, Lloyd I. Isler, M. William Krasilovsky, New York City, of counsel.

Lewis A. Dreyer and Jack M. Ginsberg, New York City, for defendant Ross Jungnickel, Inc.

Gilbert & Gilbert, New York City, for defendant Bourne, Inc. Theodore R. Jackson, New York City, of counsel.

FREDERICK van PELT BRYAN, District Judge.

This action for copyright infringement and unfair competition was tried before me without a jury. The court has jurisdiction over the subject matter and the parties, with the exception of defendant Theodore Presser Company, who was not served.

Plaintiffs Joan Whitney and Alex Kramer are professional song writers who prior to November 1950 had written and published a number of songs. In November 1950 they composed a song which they entitled "No Man Is an Island". The title was taken from the opening phrase of a quotation from the Seventeenth Century Meditation by John Donne [1] appearing on the frontispiece of Ernest Hemingway's novel "For Whom the Bell Tolls". The phrase came to plaintiffs' attention through the novel. The first line of the lyric is the same as the title of the song. The second line of the lyric "No man stands alone" is in plaintiffs' own words and is not from the Donne quotation though the theme of the lyric has to do with the brotherhood of man.

Pursuant to a written agreement dated November 21, 1950, plaintiffs assigned to defendant Bourne, Inc. all rights to their composition subject to the payment of composers' royalties. Bourne registered the song in the Copyright Office as an unpublished work and thereafter published. On February 12, 1951 a certificate of registration of a claim to copyright as a published work was issued to Bourne. Bourne's legal title to the composition and plaintiffs' beneficial interest therein are not disputed.

Bourne, Inc. was named as a party defendant under the terms of its agreement with the plaintiffs which reserved to them the right to institute an action for infringement upon the failure of Bourne to do so after written demand, provided that Bourne be named a party to the action. See Manning v. Miller Music Corp., D.C.S.D.N.Y., 174 F.Supp. 192. These conditions have been complied with. Bourne has cross-claimed against defendant Jungnickel for the same relief sought by the plaintiffs.

In the summer of 1953 Ted Lehrman and Phil Sheer composed a song which also bore the title "No Man Is an Island". Sheer was a pianist and music teacher and Lehrman, who had a variety of jobs, is now a high school teacher. They had written songs before this but this was the first which was published. Others have followed.

The title of the song was later changed to add the phrase in parentheses in smaller letters "No Man Can Stand Alone". The lyric used the two phrases in the title as its opening lines. There is no question but that the music is entirely different from that composed by plaintiffs, as are the rest of the lyrics. The lyric was originally written as a love lyric. After discussions with Theodore Presser Company, the publisher to whom the song was offered, the lyric was revised and changed to a religious theme. Theodore Presser Company registered a claim of copyright as an unpublished work on January 7, 1954 and secured a certificate of a claim to copyright as a published work on November 23, 1954. Thereafter the copyright, and all other rights in the song, were assigned to defendant Jungnickel who continued to publish it.

Plaintiffs claim that the copyright of their song "No Man Is an Island", with the opening lines "No man is an island, No man stands alone", is infringed by the Lehrman and Sheer song "No Man Is an Island (No Man Can Stand Alone)".

[1]. "No man is an *Iland*, intire of it selfe; every man is a peece of the *Continent*, a part of the maine: if a *Clod* bee washed away by the *Sea*, *Europe* is the lesse, as well as if a *Promontorie* were, as well as if a *Mannor* of thy *friends* or of *thine owne* were; any mans *death* diminishes *me*, because I am involved in *Mankinde:* And therefore never send to know for whom the *bell* tolls; It tolls for *thee.*" Meditations and Devotions upon Emergent Occasions, Random House, Nonesuch Ed. Devotion XVIII, p. 332.

They assert that Lehrman and Sheer copied the title of the song they composed, the two opening lines and the repeated line "No man can stand alone" in the closing verse of the lyric, from their original composition. They also claim that publication of the song by defendant Jungnickel constitutes unfair competition.

Defendant Jungnickel contends that the phrase "No man is an island", like that of plaintiffs' song, was derived by the composers from the Donne quotation in the Hemingway novel and not from the plaintiffs' song. The second phrase of the title and the second line of the song "No man can stand alone", Jungnickel says, is in Lehrman's own words but was also inspired by the theme of the Donne quotation. The composers, Lehrman and Sheer testified to this effect upon the stand and steadfastly maintained that they had no knowledge whatsoever of plaintiffs' song when they composed theirs, but that their inspiration came solely from the Donne quotation, and that, with the exception of the words taken from that source, the lyrics are Lehrman's original work.

Whether or not Donne's quotation was widely known prior to its use on the frontispiece of "For Whom the Bell Tolls", it was certainly widely disseminated in Hemingway's distinguished and best selling novel. Plaintiffs would have had great difficulty in establishing a claim of infringement or unfair competition based solely on the words "No man is an island" taken directly from Donne.[2] Plaintiffs, however, center their attack on the phrase "No man *can* stand alone", coupled with the Donne line, both as used in parentheses in the title of the Lehrman and Sheer song and as used in its second line. They urge that this phrase was copied by Lehrman from the line "No man stands alone" in their song and was deliberately exploited as part of the title in order to make it appear that the two songs were identical.

Plaintiffs must establish that actual copying occurred in order to make out a case of copyright infringement. Mere coincidental similarity, absent copying, is not enough. Heim v. Universal Pictures Co., Inc., 2 Cir., 154 F.2d 480; Alexander v. Irving Trust Co., D.C.S.D. N.Y. 132 F.Supp. 364, 367, affirmed 2 Cir., 228 F.2d 221, certiorari denied 350 U.S. 996, 76 S.Ct. 545, 100 L.Ed. 860.

In cases like this, however, it is virtually impossible to adduce direct proof of copying, and the plaintiffs have not attempted to do so. Evidence of copying must necessarily be circumstantial and is ordinarily based on proof of access and similarity. This is the theory on which plaintiffs proceed here. If copying did in fact occur, it does not matter if it was done unconsciously and without intent to appropriate plaintiffs' work. Bad faith is not a necessary ingredient of plaintiffs' proof. Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 81 F.2d 49, certiorari denied 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392; Buck v. Jewell-LaSalle Realty Co., 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971; Fred Fisher Inc. v. Dillingham, D.C.S.D.N.Y., 298 F. 145.

Here, only two lines are claimed to have been appropriated from plaintiffs' lyric, one of which is from a source in the public domain. The similarity concededly ends there. This would not prevent recovery if the lines claimed to have been appropriated constitute an important and vital part of the two compositions rather than being merely incidental or trivial. See Boosey v. Empire Music Co., D.C. S.D.N.Y., 224 F. 646.; Paramore v. Mack Sennett, Inc., D.C.S.D.Cal., 9 F.2d 66; M. Witmark & Sons v. Pastime Amusement Co., D.C., 298 F. 470, affirmed 2 Cir., 2 F.2d 1020; Ball, The Law of Copyright and Literary Property, p. 336. It is, however, unnecessary to determine this question here, for I find that the plaintiffs have failed to meet their burden of establishing that either of the two

---

**2.** Three choral arrangements of the Donne meditation were registered for copyright, one in 1950 by Carl Fischer, Inc., one in 1951 by Leeds Music Corp., and one in 1952 by Theodore Presser, Inc., a named defendant here.

754

lines which they claim to have been appropriated were in fact copied by Lehrman and Sheer from their song.

Plaintiffs sought to establish access to their song by Lehrman and Sheer from which it could be inferred that knowing or unconscious copying occurred, by evidence as to the exploitation and performance of "No Man Is an Island". It appears that the song was recorded by Fred Waring and his Pennsylvanians in February 1951 on the Decca label. While some thirty-six thousand records had been sold by Decca up to the end of 1958, only seven thousand five hundred were sold up to the end of the year 1953, in the summer of which the Lehrman and Sheer song was written. A choral arrangement of plaintiffs' song was published by Shawnee Press, a Waring affiliate, in 1952. While some 364,000 copies of this arrangement were sold up to the end of 1958, only 65,000 copies had been sold through the end of 1953. Sales of sheet music up to the end of 1953 were 1,557.

Fred Waring used the song as part of his repertoire on his concert tours both before and after 1953, and it was listed in the Shawnee Press catalogue. It was also broadcast on a few network radio and television programs and a number of local programs in various parts of the country up to the end of 1953. In 1951 it was selected as a theme song for Brotherhood Week by the National Conference of Jews and Christians and the Young Women's Christian Association, and similar groups used plaintiffs' song in connection with their programs and meetings to a limited extent through the end of 1953. Plaintiffs also sought to exploit the song by circulating disc jockeys though much of this effort took place subsequent to 1953. While some enthusiasm was expressed, it does not appear they were widely successful. The evidence indicates that the song was much more widely performed and successfuly exploited after Lehrman and Sheer wrote their song than before.

While the evidence as to the circulation and performance of plaintiffs' song prior to and particularly after 1953, taken in isolation, might seem not unimpressive, it certainly does not indicate that their song was by any means a hit or that it was widely known or frequently performed in comparison with the possibilities available. One of plaintiffs' own songs is claimed to have sold a million copies. The potential record market for popular hits is said to be some three million, and songs become widely known only after they have been performed in public again and again, over radio and television, and the sale of records and music reaches almost astronomical figures. The Fred Waring choral rendition of the Battle Hymn of the Republic, for example, is said to have sold some ten million copies and others ran to very large figures. Compared with such figures plaintiffs' song made a minor impact at best, had a relatively limited appeal and circulation, and cannot be said to have been widely or generally known.

Plaintiffs contend that in the light of the evidence as to the exploitation and performance of the song, Lehrman or Sheer, or both, must have heard it at some time before they wrote their composition, and that while there is no direct evidence that there was copying the inference must be drawn that either conscious or unconscious copying occurred. Evidence was introduced showing that Lehrman and Sheer were interested in music, listened to radio and television broadcasts, had phonographs at home, and had been engaged in occupations which might conceivably have led them to hear plaintiffs' song at some time. But both Lehrman and Sheer strenuously denied on the stand that they had ever seen, heard, or heard of, plaintiffs' work before they wrote theirs. Their testimony in detail as to the circumstances under which the lyric was written, the source of Lehrman's "inspiration" for the lines in controversy, and the changes from the original love lyric to a religious theme at the suggestion of the publisher, was entirely credible. They withstood strenuous attacks on their credibility. Moreover, it appears that rather than

adding the parenthetical phrase "No Man Can Stand Alone" to the title to identify their song with plaintiffs, this was done after some protest from the plaintiffs' publisher in an effort to distinguish the two.

It is not unlikely that two persons who start with Donne's line "No man is an island" might arrive independently at the second lines "No man stands alone" or "No man can stand alone", particularly in view of the theme of the balance of the Donne quotation. The ideas involved are not so unique or unusual as to make it unlikely that they were created independently. The fact that the remainder of the lyrics, the music and the themes of the two songs are entirely different strengthens this conclusion. See Twentieth Century-Fox Film Corp. v. Dieckhaus, 8 Cir., 153 F.2d 893, certiorari denied 329 U.S. 716, 67 S.Ct. 46, 91 L.Ed. 621; Newcomb v. Young, D.C. S.D.N.Y., 43 F.Supp. 744; Morse v. Fields, D.C.S.D.N.Y., 127 F.Supp. 63.

The possibility that Lehrman or Sheer may have heard plaintiffs' song at some time over the air cannot be altogether excluded. But a finding that they had done so and that they had derived these two lines from plaintiffs' song would be mere conjecture and speculation wholly unjustified by the evidence here. Plaintiffs' evidence as to access is wholly insufficient to overcome Lehrman and Sheer's direct testimony or to justify the inference that there was unconscious copying, much less a deliberate attempt at imitation. Cf. Twentieth Century-Fox Film Corp. v. Dieckhaus, supra.

I find that the plaintiffs have failed to establish copying and therefore have not sustained their claim of copyright infringement.

Plaintiffs have also failed to make out a case of unfair competition. They have not established that either the title and first line of their song, or the second line, has acquired a secondary meaning identifying the song in the minds of the public as originating with them. The proof is insufficient to show that plaintiffs' song was well known to the public,

that the title was associated in the public mind with their song, or that confusion and deception would result from the publication of defendants' song. The applicable standards to sustain the claim of unfair competition have not been met. See Kellogg v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Alexander v. Irving Trust Co., supra.

The complaint will be dismissed and judgment will be granted in favor of defendant Jungnickel. The cross-claim of defendant Bourne, Inc. against defendant Jungnickel will be dismissed and judgment will be granted in favor of defendant Jungnickel on the cross-claim. The complaint will also be dismissed as to defendant Bourne, Inc.

Judgment will be entered accordingly.

This opinion constitutes my findings of fact and conclusions of law.