[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12229

Non-Argument Calendar

_____

JOSHUA JORDAN,

Plaintiff-Appellant,

*versus*

THE CLOSET FACTORY FRANCHISE CORPORATION,
a California Corporation,
CLOSET FACTORY,
an Unregistered Florida Business Entity,
a.k.a. Closet Factory Tampa,
a.k.a. Tampa Closet Factory,
JACK GREEN,
individually,
SYLVIA ROSADO-DELAY,

individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:24-cv-00152-SDM-SPF

_____

Before BRANCH, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Joshua Jordan, *pro se*, appeals the district court's order dismissing with prejudice his amended complaint alleging breach of contract, fraudulent misrepresentation, negligence, and violations of the Florida Deceptive and Unfair Trade Practices Act for lack of subject-matter jurisdiction. He argues that the district court erred in finding that he failed to satisfy the amount-in-controversy requirement. Upon thorough review of the record, we reverse and remand to the district court for further proceedings not inconsistent with this opinion.

**I.**

In February 2023, Jordan spoke with Rosado, a Closet Factory agent, about purchasing custom closets. During this conversation, Jordan shared his expectation that Closet Factory's products

would include soft-close drawers and cabinets. Rosado responded affirmatively, explaining that Closet Factory did everything with soft-close features. Rosado later emailed Jordan renderings of the custom closets and explained that the "[d]rawers [were] all soft close." In early March, Rosado reassured Jordan that there was "no necessity" to add the soft-close features into his contract, emphasizing that Closet Factory's standard practice included the use of soft-close features in its products.

Two days later, Jordan entered a contract with Closet Factory, in which he agreed to pay $16,370.35 for the custom closets. Jordan paid $14,733.32 throughout the installation and owed the remaining $1,637.03 upon project completion, which never occurred. Following the installation, Jordan realized that his cabinets did not have the soft-close feature. Closet Factory refused to rectify the situation for free, instead offering to install the feature for an additional payment. Jordan spent an additional $2,500 to fix the mistake.

Jordan told Rosado that "he would be willing to overlook" Closet Factory's misrepresentations and unfinished work if Closet Factory would stop demanding that he sign a final completed work order and pay the outstanding balance. In July 2023, Jordan informed Closet Factory that he "intended to reserve all legal rights and remedies" if Closet Factory would not "immediately" confirm that their matter was resolved. Jordan noted that his contract included a clause that assigned him liability for Closet Factory's attorney's fees if it were to sue him for nonpayment.

Jordan came to believe that Closet Factory was not registered or licensed with the state. According to Jordan, although Jack Green represented online to own Closet Factory, "there [was] no registered agent named as Defendant Green as it relates to a 'Closet Factory' or any variation" registered with the state, in violation of Florida law. Jordan also came to believe that Closet Factory was not "authorized to perform contracted work under Defendant Green" and that Closet Factory, CFFC, and Green manipulated Google reviews to only display positive reviews and prevent his attempted negative review from posting.

In January 2024, Jordan filed a complaint. He first asserted a claim of breach of contract with joint and several liability, alleging that the defendants failed to uphold their contractual obligation to install his custom closets with soft-close features, resulting in at least $17,233.32 in damages. Jordan further alleged that, because his contract provided attorney's fees only for Closet Factory, he was entitled to attorney's fees and legal costs as the contractual benefit extended to all parties under Fla. Stat. § 57.105(7).

Jordan then asserted three independent claims of fraudulent misrepresentation. First, Jordan alleged that the defendants knowingly made false representations about the soft-close features. Jordan alleged that the defendants were "personally guilty of intentional misconduct or gross negligence"—and thus sought, in addition to compensatory damages, an unspecified amount of punitive damages. Second, Jordan alleged that the defendants knowingly made false representations to him that Closet Factory was a

"legitimate, registered business." Lastly, Jordan alleged that the defendants falsely represented that they were a licensed contractor authorized to work under Green.

Next, Jordan asserted a claim of unjust enrichment, alleging that he "performed all conditions, covenants, and promises required" by the terms and conditions of their contract, yet the defendants either inadequately rendered or failed to render the agreed-upon service, all while operating under false pretenses as a legitimate business. Jordan argued that the contract was unenforceable under Florida law and that he was entitled to "a complete refund," totaling $17,233.52.

Jordan asserted two claims of negligence and negligence per se against the defendants. First, Jordan alleged that the defendants were negligent and that they committed negligence per se by falsely representing that they were a licensed contractor. Jordan further alleged that he suffered damages "estimated to be not less than $17,233.52," but would also seek punitive damages. Jordan asserted a claim alleging that the defendants were both negligent and committed negligence per se by misrepresenting Closet Factory as a legitimate business. Jordan again alleged that he suffered damages "estimated to be not less than $17,233.52," but would also seek punitive damages.

Lastly, Jordan alleged that the defendants violated the Florida Deceptive and Unfair Trade Practices Act by engaging in "deceptive and unfair practices," including "misrepresenting their licensing status, misrepresenting their positive reviews and presence

online, operating under a non-existent business name, and making false claims about their services." Jordan contended that, as a result of the defendants' FDUTPA violations, he suffered $17,233.52 in actual damages. Jordan then argued that, under the Act, he was entitled to "a civil penalty not more than $10,000.00 for each willful violation" by the defendants and attorney's fees and legal costs. Jordan "demand[ed]" punitive damages to the maximum extent allowed by law for the defendants' willful FDUTPA violations.

In his Prayer for Relief, Jordan detailed his requested damages, explaining that he sought $17,233.52 in compensatory damages, along with any compensatory and punitive damages determined at trial for his fraudulent misrepresentation, fraud per se, negligence, and negligence per se claims. Jordan also asked the court to award him his entitled attorney's fees and court costs under Florida Statute § 57.105(7) and the FDUTPA.

The defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). They discussed Jordan's previous attempts to sue them in state court, then argued that Jordan pleaded allegations that he knew, or should have known, were false. The defendants rebutted Jordan's argument that Closet Factory operated as an unregistered and unlicensed business, attaching copies of its registration with the Florida Secretary of State, its record with the Florida Divisions of Corporations as a Florida limited liability company with Green as the registered agent, and its contractor's license.

The defendants contended that the district court must dismiss Jordan's complaint for failing to allege sufficient damages to meet the amount in controversy requirement. Specifically, the defendants argued that Jordan's complaint repeatedly requested $17,233.52, an amount significantly short of the jurisdictional minimum, and that he failed to allege facts establishing that he sustained damages exceeding $75,000. Jordan responded that the defendants overlooked his extensive demands for "punitive damages, statutory treble damages, and attorney and legal fees as provided by contract and statute." Jordan then summarized the "potential damages in this case" in a table, which asserted an estimated minimum of $389,545.40 in damages, including $17,233.52 in compensatory damages, $34,875 in attorney's fees, $10,000 in civil penalties and $17,233.52 in actual damages under the FDUTPA, and a total of $310,203.36 in punitive damages.

The district court dismissed Jordan's complaint. The court noted that, although he claimed his damages exceeded $75,000, Jordan asked for $17,233.52 in compensatory damages. The court explained that it could not include Jordan's alleged punitive damages when calculating the amount in controversy because Jordan did not demonstrate that the defendants committed "egregious" conduct that qualified for punitive damages under Florida law.

The court did not address Jordan's claim for attorney's fees, noting that, even if he were entitled to the alleged "reasonable legal fee" of at least $30,000, Jordan failed to establish damages exceeding $75,000. The court instructed Jordan that he had 17 days to

amend his complaint, stating that "[a]ny amended complaint must establish that the amount in controversy exceeded $75,000 on the day [he] filed this action. Failure to comply with the deadline or failure to establish jurisdiction and state a claim will result in dismissal for lack of jurisdiction (the case will end)." It also advised Jordan to obtain legal advice and assistance from a member of the Florida Bar and explained that, to the extent Jordan intends to continue to represent himself, he should familiarize himself with both the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida.

Jordan filed an amended complaint, reasserting that the district court had subject-matter jurisdiction because the complaint was "an action for damages that exceed $75,000.00, exclusive of interest, costs, and attorney's fees." Jordan also reasserted all nine claims from his original complaint. Jordan further asserted three *new* claims of misleading advertising, alleging that the defendants intended to deceive customers by falsely representing in Closet Factory advertisements that they use soft-close features, operate a legitimate business, and have a contractor's license. For each new claim, Jordan sought compensatory and punitive damages. Jordan summarized the "potential damages in this case" in a table in the amended complaint, which asserted an estimated minimum of $654,113.56 in damages. Jordan explained that he had calculated his attorney's fees by multiplying 204.5 hours, which he determined by adding 104.5 "prior hours" and 100 "estimate" future hours, by an hourly rate of $350, which he "obtained" from a 2022 hourly billing rate survey from the Florida Bar.

24-12229               Opinion of the Court                    9

The defendants filed a motion to dismiss Jordan's amended complaint under Rules 12(b)(1) and 12(b)(6). They again discussed Jordan's previous attempts to sue them in Florida court, then re-explained that Jordan had pleaded allegations that he knew, or should have known, were false. They contended that Jordan's allegations were insufficient to establish the district court's subject-matter jurisdiction and that his complaint repeatedly alleged that he suffered damages of $17,233.52, an amount significantly short of the jurisdictional minimum.

The defendants rejected Jordan's attempt to include $71,575 worth of attorney's fees in his amount in controversy calculation, arguing that Jordan, as a *pro se* litigant, cannot recover attorney's fees as a matter of law. They noted that Jordan alleged $465,305.04 in punitive damages for the same conduct as alleged in his original complaint, despite the court having already held that he failed to demonstrate that the defendants' conduct qualified for punitive damages. And they contended that the court must dismiss Jordan's amended complaint with prejudice because he "abused the privilege to amend" and because allowing him another opportunity would "be both prejudicial and futile."

Jordan acknowledged the "general rule" that *pro se* litigants cannot recover attorney's fees, but then explained that, when estimating his attorney's fees, he included fees "for potential legal representation and statutory attorney's fees." Jordan then argued that, as the FDUTPA authorized civil penalties up to $10,000 per willful violation, his "nine separate FDUTPA violation" allegations

independently exceeded the jurisdictional minimum. Lastly, Jordan contended that, under our "clear and controlling" guidance, the district court erred in its previous dismissal order by disregarding his punitive damages "on an assessment of the merits."

The district court dismissed Jordan's amended complaint. In its order, the court stated that Jordan "must show that the defendants committed 'egregious' conduct supporting [his] claim" for the court to have included his alleged punitive damages in the amount in controversy. The court found that, by reasserting his original complaint's claims in his amended complaint, Jordan disregarded its earlier order's determinations that he had failed to establish that he might recover punitive damages and that the defendants "effectively rebut[ted]" his claims that they fraudulently operated a business. The court rejected Jordan's contention that his pleadings offered "detailed factual assertions," explaining that his "conclusory" allegations "fail[ed] to support Jordan's claim for punitive damages."

The court found Jordan's argument for attorney's fees unavailing, explaining that nothing in the record supported the idea that Jordan paid an attorney to work on his case. The court concluded that Jordan failed to show that the amount in controversy exceeded $75,000 on the day that he filed the lawsuit. After noting that Jordan's amended complaint was his fourth attempt to initiate litigation against the defendants after two state courts had already dismissed his complaint, the court granted the defendants' motion and dismissed Jordan's amended complaint with prejudice.

Jordan appealed.

## II.

When reviewing the district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011).

## III.

Jordan argues that the district court erred in its amount in controversy analysis. Specifically, he contends that the district court failed to properly account for his pleaded attorney's fees, his asserted entitlement to civil penalties under the FDUTPA, and his pleaded punitive damages. We take each in turn.

Diversity jurisdiction exists in a civil action if the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). "State law is relevant to th[e] determination [of the amount in controversy] insofar as it defines the nature and extent of the right plaintiff seeks to enforce." *Duderwicz v. Sweetwater Sav. Ass'n,* 595 F.2d 1008, 1012 (5th Cir. 1979) (internal quotations and citation omitted).

We begin with Jordan's pleaded attorney's fees. Jordan argues that his $71,575.00 in attorney's fees and his $17,233.52 in compensatory damages exceeds the jurisdictional threshold. But we have held that *pro se* litigants are entitled to an award of attorney's fees only to the extent that the "services of an attorney were

utilized and fees incurred." *Barrett v. Bureau of Customs*, 651 F.2d 1087, 1089 (5th Cir. 1981); *Clarkson v. IRS*, 678 F.2d 1368, 1371 (11th Cir. 1982). Here, as a factual matter, the district court found that "[n]othing in the record shows that Jordan paid an attorney to work on this action." We cannot say that the district court clearly erred in this finding.

Next, we address Jordan's asserted entitlement to civil penalties under the FDUTPA. According to Jordan, "Florida law authorizes substantial civil penalties for willful violations of FDUTPA, which must be included in the amount in controversy calculation." But the FDUTPA provides that civil penalties may be recovered in actions brought by the "enforcing authority," which is either the Office of the State Attorney or the Department of Legal Affairs. Fla. Stat. §§ 501.203(2), 501.2075. Since this action was brought by a private individual—not the "enforcing authority"—a civil penalty is unavailable under the FDUTPA.

Lastly, we address Jordan's pleaded punitive damages. Punitive damages must be considered when determining the jurisdictional amount in controversy "unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987). There are two ways in which a court may conclude, to a legal certainty, that the jurisdictional amount in controversy has not been met. *Barry v. Edmunds*, 116 U.S. 550, 559 (1886). First, the court may conclude, as a matter of law, that the jurisdictional amount is not recoverable, such as where the nature of the action caps the amount that is recoverable.

*Id.* at 559-60. Second, the court may find, as a matter of fact, that the amount of claimed damages has been projected beyond the amount of a reasonable expectation of recovery, but such a finding must rest on facts in the record. *Id.*

Here, Jordan alleged entitlement to nine separate counts of punitive damages totaling $51,700.56 each (for a grand total of $465,305.04). Florida law allows punitive damages for Jordan's tort claims, Jordan alleged the statutory maximum in damages for each claim, and—from the face of Jordan's amended complaint—it does not appear that he made these allegations solely to establish jurisdiction. *See* Fla. Stat. §§ 768.72, 768.73(1)(a). The district court excluded these damages when calculating the amount in controversy, but, in doing so, did not find it was apparent to a "legal certainty" that Jordan could not recover punitive damages. In light of Jordan's allegation of fraudulent conduct, we also cannot say that he cannot recover punitive damages to a legal certainty. Accordingly, we cannot say that Jordan lacks the right to punitive damages to the degree of legal certainty that would preclude him from relying on a contested claim to punitive damages to meet the amount in controversy.

## IV.

We **REVERSE** the order of dismissal for lack of subject-matter jurisdiction and **REMAND** for further proceedings not inconsistent with this opinion.