ELAYNE R. LEAND *vs.* CLARK, CHILDS & CO.

JULY 6, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

MURDOCK, J. This action in assumpsit was tried by a justice of the Superior Court sitting without a jury. The decision was for the plaintiff and the case is here on the exceptions of both plaintiff and defendants. Plaintiff's exception is to the decision "in so far as said decision awards the plaintiff a smaller amount of damages than should have been awarded." The exceptions of defendants relied upon are to the decision in favor of the plaintiff and the failure of the trial justice to consider defendants' plea in set off.

The defendants are co-partners engaged in the business of stock brokerage. They are members of the New York Stock Exchange and have an office in Providence where they receive orders for the purchase and sale of stocks to be executed on the New York Stock Exchange.

The plaintiff's husband, Milton Leand, was employed by the defendants in their Providence office as "customer's man." His duties were to interview customers, give them information with respect to their dealings with the defendants and generally to aid both customers and defendants

in the reception and execution of orders for the purchase and sale of stocks.

As employees of the defendants were not allowed to deal in stocks through them, it was customary for employees to carry their accounts in their wives' names. While the account which gave rise to the present action was in the name of the plaintiff, it was managed by her husband and she is bound by any action taken by him with respect thereto.

This account on October 31, 1929, had to its credit 100 shares of Fox Film A stock. On the above date at 11:40 a. m., the plaintiff, through her husband, gave an order to sell said stock at 88. The stock market on this date did not open for trading until noon. At about 12:30 p. m., plaintiff cancelled her order to sell at 88 and gave another order to sell at 83⅞. This order was received at the defendants' New York office at 12:42. About 2:30 p. m. on said day, Milton Leand received from a telegraph operator in defendants' Providence office a notification that the stock had been sold at 84. A confirmation of this notice was sent the same day from defendants' Boston office but through a mistake was sent to a brother of Milton Leand. The mistake was rectified by sending another confirmation to the plaintiff which she received on the afternoon of the following day, Friday, November 1. The confirmation received by the plaintiff contained the following: "Please notify us at once of any error or omission noted in the following report, which, in default of such notification within forty-eight hours shall be considered as correct and conclusive, and all the conditions above noted, understood and agreed to."

On Friday and Saturday, November 1 and 2, the stock market was closed. Monday, November 4, it was open. Shortly after the closing hour—which was 3 p. m.—Milton Leand was handed a notice from the New York office to the Providence office directing the cancellation of the report of October 31 that 100 shares of Fox Film A at 84 had been

sold. This, it is admitted, referred to the stock of the plaintiff. Leand refused to accept cancellation and the Providence office telegraphed to the New York office as follows: "Re 100 Fox at 84. Customer's limit was 83⅞. He claims he should have report on that limit as stock sold thru", that is, that the stock had sold higher than 83⅞.

Several telegrams appear to have been exchanged November 4 between the two offices respecting this matter and one from the New York office was to the effect that the rules of the New York Stock Exchange made acceptance of the cancellation by the customer obligatory. It is asserted in the brief for plaintiff and not denied in defendants' brief that there is no such rule of the exchange.

On Wednesday, November 6, Leand talked with Mr. Holbrook, one of the partners in the Boston office, who suggested that Leand write a letter giving all the details. Leand requested one of the managers of the Providence office to write the letter so that the account of the matter should be unbiased. This the manager did, setting forth the reasons why Leand refused to accept cancellation of the purported sale at 84. No reply to the letter appears to have been received.

On November 26, the defendants wrote the plaintiff as follows:

"Dear Madam:

Please be advised that we have charged your account $8376,—receiving in against same 100 shares Fox Film 'A.'
This is to cancel the sale of 100 shares of Fox Film 'A' at 84, on October 31st, reported to you in error.

Yours very truly,
Clark, Childs Co.
By H. F. Carlson."

The plaintiff relies on three grounds: (1) That the statement in the letter of confirmation above quoted is an offer

which was accepted by the plaintiff in accordance with the terms of the offer and, therefore, constituted a sale at 84; (2) that defendants are estopped to deny that the sale was made at 84 and (3) that the defendants failed to perform a duty owed by them as agents to the plaintiff as principal.

We are of the opinion that the plaintiff cannot recover on the first ground. The trial justice found as a fact that no sale had been made and the letter of confirmation was sent on the supposition that a sale had been made. The defendants were acting as brokers and not as purchasers and, if a mistake was made in announcing a sale, they were entitled to correct the mistake if the plaintiff had not in the meantime changed her position on the faith of the original statement. Meyer, Law of Stockbrokers and Stock Exchanges, (1931) pp. 293, 294. Whether there was ground for estoppel in this case will be discussed when we consider the question of damages. If the defendants are liable to the plaintiff, liability, we think, must be found in some failure of duty on their part in their capacity as brokers.

A broker is an agent for the person for whom he undertakes the purchase or sale of securities. It is the duty of an agent to communicate promptly to his principal all the facts that may come to his knowledge affecting the latter's interest. Mecham on Agency, (2d. ed.) p. 993. 9 C. J. 536.

The defendants filed a special plea to the effect that the sale of plaintiff's stock had been intrusted to a "specialist" who made a verbal erroneous report of the sale of the same at 84; that a correction of this report was not made to defendants until November 4, when they notified plaintiff through their Providence office that the sale had not been made. There was no evidence offered in support of this plea. The "specialist" whose testimony was taken by deposition denied that he made a report to defendants of a sale of plaintiff's stock at 84. None of the defendants testified and no explanation was given as to when the error was discovered. We cannot accept their contention that the burden is on the plaintiff of establishing as a fact that

she was not seasonably notified of the error. The notice of the sale and the letter of confirmation were *prima facie* evidence of the fact that a sale had been made. The burden was on the defendants to show that the correction of the erroneous report was seasonably made.

In Meyer, The Law of Stockbrokers and Stock Exchanges, *supra*, the author says: "If the broker transmits a statement in which, through a clerical error, a more favorable price is reported than that at which the order was actually executed, he is entitled to send a duplicate corrected statement, provided that the customer has not changed his position on the faith of the original statement. In such a case the broker is not estopped to deny the accuracy of the statement first sent. However, if the customer has changed his position on the faith of the broker's statement and acted upon it, the broker will subsequently be estopped to deny its correctness. Even in the absence of a change of position on the customer's part, the broker's confirmation is *prima facie* proof in behalf of the customer that the order was executed as reported. Such proof cannot be rebutted by a mere letter from the broker to the customer asserting that an error was made."

Considering the nature of the business undertaken by defendants, which requires prompt and accurate information as to every detail, it is improbable that the defendants did not know of the error before the closing of the market on November 4th. If they did not know of the error before, they were an unreasonably long time in discovering it and the loss by reason of the delay should fall on them and not on the plaintiff. We are of the opinion that defendants failed in a duty owed to the plaintiff for which they must respond in damages.

The trial justice took 84 as the price which the plaintiff was entitled to receive and allowed the difference between that figure and 64, which was the low price for plaintiff's stock on the day following the notice of cancellation.

We find no basis for allowing the plaintiff 84 for her stock, except on the principle of estoppel and we find nothing in the record which indicates that the plaintiff had altered her position in reliance on the notice of sale at that price. Had she incurred a new obligation, relying upon the sale of her stock at 84, there might be ground for saying that the defendants were estopped to deny a sale at that figure. *Meyer, supra.*

The closing price for Fox Film A on November 4, was 81 but there is no evidence that the plaintiff contemplated lowering her price from 83⅞ on that day. She was not in the possession of facts that would lead her to take such action. Owing to the confused state of the market, reports of sales on the Exchange were about one hour behind. Fox Film A had sold at 84 earlier in the day, and while it closed at 81, there is no evidence that she knew this fact in time to have sold the stock at that figure. Plaintiff is entitled to be placed in as advantageous a position as though the mistake had not been made. Had she been notified before the opening of the market on November 4th that her stock was not sold, she could have sold it on that day at 79½; and this is the figure, we think, which must be taken as the basic price in arriving at her loss.

The trial justice held that the plaintiff should have sold on November 5 in order to minimize the damages and on that day the low price of the stock was 64. He therefore allowed as her damages $20 a share, or $2,000. This finding was based on the unquestioned principle that a person who has been injured by another by reason of failure to perform the obligations of a contract must take such action as a reasonably prudent person would take to place himself, so far as reasonably possible, in as good a position as though the default had not occurred. But the duty to take such action must be clear. The injured party need not involve himself in any risk. In the instant case the defendants did not take an unequivocal stand that the notice of the cancellation of their previous notice of sale

was their last word. They asked for a report from the plaintiff, gave an interview to her representative and took no final action in the matter, so far as plaintiff was informed, until November 26, when they notified her that her account had been charged with the amount of the credit previously given by the supposed sale at 84. Under this state of facts, the plaintiff could not have sold her stock without some risk for, as matters stood between the parties up to the time of the receipt of the letter of November 26, the defendants were in a position to say that a sale at 84 had actually been made. When plaintiff received defendants' letter in which they definitely informed her that they stood by their notice of cancellation, it became her duty to sell her stock if she intended to hold the defendants liable to her for damages. Had she then sold, she could have received $56 a share and the difference between this figure and $79\frac{1}{2}$ is the measure of her damages per share, or $2,350, which with interest thereon, amounts to $2,752

The defendants' plea in set-off was not considered in the court below. They claim $624.39, and this amount is not seriously disputed by the plaintiff and is, therefore, allowed.

The plaintiff's exception to the decision is overruled. The defendants' exceptions are sustained. The case is remitted to the Superior Court for a new trial, unless on or before the eighteenth day of July, 1933, the plaintiff shall file in the office of the clerk of the Superior Court, a remittitur of all of the amount of the decision in excess of $2,127.61. If such remittitur is filed, the Superior Court is directed to enter judgment for the plaintiff for the sum of $2,127.61.

*Judah C. Semonoff, William H. Edwards,* for plaintiff.
*Cooney & Cooney,* for defendant.