RUTH PETERS *vs.* UNITED ELECTRIC RAILWAYS COMPANY.
FEBRUARY 5, 1937.

PRESENT: Flynn, C. J., Moss, Baker, and Condon, JJ.

CONDON, J.   This is an action of trespass on the case for negligence.   The action was tried before a justice of the Superior Court sitting with a jury and resulted in a verdict for the plaintiff for $10,000.   Thereupon the defendant duly filed its motion for a new trial on the ground that the verdict was against the law and the evidence and the weight thereof, and further, that the damages were excessive.   This motion was heard and denied by the trial justice, and to this ruling the defendant duly excepted.

The case is now before this court on defendant's bill of exceptions based on this exception together with others taken during the course of the trial, and amounting in all to seventeen, of which exceptions one and two are expressly waived.   These other exceptions relate to certain alleged errors made by the trial justice in permitting the plaintiff to ask certain questions; in making certain remarks in the presence and hearing of the jury; in certain portions of his charge to the jury; in refusing certain of the defendant's requests to charge the jury; and in denying defendant's motion for a directed verdict.

The defendant also makes a further claim here that this case is governed by the law as laid down in *Peters* v. *United Electric Rys. Co.,* 53 R. I. 251.   We cannot agree with this contention.   In accordance with the statute, this court, in that opinion, gave the plaintiff leave to show cause why judgment should not be entered for the defendant in the Superior Court.   Pursuant thereto plaintiff appeared and showed cause satisfactory to this court that its prior decision should not stand and that the case should be remitted to the Superior Court for a new trial.   This latter decision is contained in a rescript reported in *Peters* v. *United Electric Rys. Co.,* 167 A. 122.

It is true that in this rescript the court, as then constituted, did not expressly overrule what it had said in its

prior opinion, and did not give any reasons for its action in ordering a new trial. Nevertheless, the effect on this court of this final action of our predecessors must be to leave the case, as it is now before us after a new trial, to be decided by us without being in any way controlled by the previous opinion of this court. To view it in any other light would not be consistent either with reason or with the order remitting the case to the Superior Court for a new trial. In what follows, therefore, we have dismissed from our minds whatever was said by this court, as then constituted, in *Peters* v. *United Electric Rys. Co.,* 53 R. I. 251, and have treated this case solely on the record made on the new trial.

The first question presented for our consideration is: Did the trial justice err in refusing to direct a verdict for the defendant? This furnishes the basis of defendant's eleventh exception which it urges for two reasons: (1) That there was no evidence upon which the jury could reasonably find that the defendant was negligent, and (2) that the evidence shows that the plaintiff was guilty of contributory negligence.

Adopting the view of the evidence most favorable to the plaintiff—as is the rule on a motion for a directed verdict by the defendant—we cannot agree with either of these two contentions. The plaintiff was struck and knocked down by a motor bus belonging to the defendant, on December 23, 1930, while she was on the sidewalk, on East avenue in the City of Pawtucket, waiting, at a regular bus stop, to board the bus as a passenger. It is not contended by the plaintiff that the fact that she was "an intending" passenger is material to her case, and we have not considered that element here. On the day of the accident, it had been snowing throughout the day and some rain, followed by sleet, had also fallen. By 7:30 o'clock, p. m., the approximate time when the accident occurred, East avenue was slushy and slippery. East avenue is paved with a smooth tar surface and has a slight crown. It runs

approximately north and south, and, at the point where the accident occurred, there is a down-grade in a northerly direction toward the center of the City of Pawtucket. From Sayles avenue to a point beyond Lyman avenue—that is, from the top of the hill to the bottom—there is a fall in the grade of about four feet. The plaintiff was waiting on the easterly side of East avenue at Dryden avenue, which is the street next southerly of Lyman avenue, for a bus going to Pawtucket, and, at this point, the grade is a small fraction short of four feet from the top of the hill.

On the day of the accident, the defendant's operator, during the greater part of the late afternoon, had been operating the defendant's bus over East avenue and was aware of the slippery condition of the highway. This bus is twenty-seven feet long and weighs sixteen thousand pounds. It has four "speeds" forward and one reverse; fourth speed is high speed. It was equipped with single wheels forward and double wheels on the rear, and was equipped with pneumatic rubber tires but was without chains or other devices to prevent or check skidding or sliding.

The operator had just completed a southbound trip and was on his way back to Pawtucket when the accident occurred. He was proceeding along in fourth speed at about fifteen to twenty miles an hour as he approached the top of the hill at Sayles avenue, which is about 670 feet south of the scene of the accident, and he continued at that rate of speed as he went down the hill until he was within 150 to 200 feet from the bus stop, where the plaintiff was standing with her sister. When the operator of the bus saw them, he brought his speed down to eight or ten miles per hour by applying the foot brake and by making a swift turn to the right in order to bring his bus over to the curb. As he did so, the bus skidded and the rear of it struck and knocked down the plaintiff, who was then on the sidewalk

in the act of walking toward the front of the bus with the intention of boarding it when it stopped.

On these facts, it is clear that the question of the defendant's negligence was for the jury. There is a conflict in the testimony as to the rate of speed of the bus, as it approached the bus stop, and as to the sharpness of the turn which was made to bring the bus over from the center of the street to the curb, but the jury was entitled to decide these questions. Under all the circumstances in evidence, the ultimate question of whether the defendant was negligent was not a matter of law to be decided by the court but was a question of fact to be found by the jury.

Likewise the question of the contributory negligence of the plaintiff, if any, was not under the facts here a matter of law. One cannot read the testimony and fairly reach any other conclusion. It would be a most unreasonable rule to hold that the plaintiff was guilty of contributory negligence as a matter of law merely because she walked on the sidewalk in the direction in which the bus was proceeding when it went past the bus stop. Whether, under all the circumstances, her action was what an ordinarily careful and prudent person would have done was a question for the jury to answer. Hence, the trial justice did not err in denying the defendant's motion and submitting the case to the jury. The defendant's eleventh exception must, therefore, be overruled.

The defendant, under his twelfth and thirteenth exceptions, contends that the trial justice erred in his charge to the jury and in refusing defendant's eleventh request to charge. No specific part of the charge is pointed out as objectionable or prejudicial but the claim is made that the net effect of the whole charge is harmful to the defendant because the trial justice dwelt, with too much emphasis, on the plaintiff's testimony and considered too slightly the defendant's testimony in his comment thereon to the jury. Ordinarily, an omnibus objection of this character to the whole charge, without specifically pointing

to the prejudicial portion, is not entitled to consideration. In *Demara* v. *Rhode Island Co.*, 103 A. 708, this court held, however, that in a personal injury case, where the evidence was conflicting, an outline thereof given by the court in its charge, containing about seven pages of the plaintiff's evidence and only about twelve lines of the defendant's evidence, made the charge erroneous and misleading. The trial justice had closed his charge in that case with a final statement to the jury that they "should determine what the evidence is" from what they "heard detailed from the stand and not from the court"; but notwithstanding this warning, this court decided that this statement was not calculated to efface the misleading impression that had already been made. The defendant relies on this case, and seeks to bring the charge of the trial justice in the instant case under the ban therein laid down. A comparison of the objectionable portions of the charge, as they appear in the opinion in the *Demara* case, with the whole or any part of the charge in the instant case will reveal no real similarity. The comment here does not appear to be partial to the plaintiff. It is more or less of a general nature and as much of it seems to us to be referable to the defendant's as to the plaintiff's testimony.

We think that the charge as a whole does full justice to the parties and that the defendant was not harmed by the refusal of his eleventh request to charge. This request for a charge that "The defendant was not guilty of negligence through its servant and agent in stopping the bus where it did", did not present to the jury an issue in the case and was properly refused. There is no merit, therefore, in defendant's twelfth and thirteenth exceptions and they must be overruled.

Defendant excepted to certain remarks made by the trial justice in the presence of the jury during the examination of one of defendant's witnesses and contends that these remarks were strongly projudicial to its interest. This is defendant's ninth exception. It appears to us to require

little discussion. These alleged remarks were not strictly remarks but questions addressed to the witness on a matter that does not, it is true, appear to be relevant, but we think that they were harmless and not calculated to mislead the jury from the true issues of the case. Defendant's ninth exception is therefore without merit and must be overruled.

Defendant, by its exceptions 3, 4, 5, 6, 7, 8 and 10, contends that the trial justice erred in permitting certain questions to be asked of its witnesses, Rossi and Sparhawk. These questions, it contends, were improper and immaterial questions and therefore prejudicial. In our view, it does not appear to be necessary for us to pass upon their propriety or materiality, as it is quite apparent from a mere reading of the transcript that the responses of the witnesses did not develop anything of a nature prejudicial to the defendant. While it is perhaps true that sometimes the mere asking of improper questions may create a prejudice so great as to vitiate a verdict, as was said by this court in *Langley* v. *F. W. Woolworth Co.*, 47 R. I. 165, nevertheless we think it cannot fairly be said that the questions here objected to are of that serious nature. Defendant's exceptions next above enumerated are therefore without merit and must be overruled.

The defendant finally contends that the trial justice erred in denying its motion for a new trial on the ground that the verdict is against the law and the evidence and the weight thereof and on the further ground that the damages are excessive. These points are raised by defendant's exceptions 14, 15, 16 and 17.

After a hearing this verdict was approved by the trial justice in a carefully prepared rescript in which he reviewed the evidence and set forth his reasons for his decision. Unless his decision is clearly wrong or is based upon a misconception of the evidence, it must be sustained. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292; *Surmeian* v. *Simons*, 42 R. I. 334; *Bourre* v. *The Texas Co.*, 51 R. I. 254.

The evidence was conflicting on several vital points. Whether the weight preponderated in favor of the plaintiff or the defendant depended in no small measure on the credibility of the witnesses. The jury had the advantage of seeing and hearing them testify and they have accepted the testimony that established, in their minds, the plaintiff's case. The trial justice has reviewed their verdict and has decided that it does justice between the parties.

After a careful examination of the evidence, we cannot say that the decision of the trial justice is erroneous or that it is based upon a misconception of the evidence. There was evidence that would justify the jury in finding that the defendant's operator was negligent in the manner in which he operated the bus under all the circumstances existing at the time of the accident. The mere skidding of the bus in and of itself was not evidence of negligence, and if that were the only evidence in the case, the verdict of the jury would have been against the law. They had already been instructed by the court, at the request of the defendant, specifically as follows: "The mere skidding of a motor vehicle on the highway is not an occurrence of such uncommon or unusual character that alone and unexplained it can be said to furnish evidence of negligence." And the jury was charged further at defendant's request: "The mere fact alone that the bus skidded to some extent just before being brought to a stop is not evidence of negligent operation of the bus."

There was something more in evidence than the mere fact of skidding. In connection with that fact and bearing a causal relation to it were a series of other facts that would tend to furnish an explanation for the skidding. In our discussion of the exception to the denial of defendant's motion for a directed verdict, we have given a summary of the evidence which indicates what these facts were, and it is not necessary to repeat what there appears. Where such facts exist in connection with skidding, the jury's finding of negligence has in other jurisdictions been upheld.

*Hennessey* v. *Moynihan,* 272 Mass. 165; *Spain* v. *Oikemus,* 278 Mass. 544; *Standard Oil Co. of New York* v. *Flint,* 183 A. (Vt.) 336.

The instant case bears a strong resemblance to *Spain* v. *Oikemus, supra.* There an automobile not equipped with chains and proceeding at a rate of twelve or fifteen miles per hour, skidded into the plaintiff, who was standing in the street waiting to board an approaching trolley car. She was at a regular stop for the car to receive passengers, and there were others standing in a group in the street for the purpose of attracting the attention of the operator of the car. The street was icy and slippery. Defendant's automobile was coming along with its front wheels in the car track ahead of the trolley car and as it reached the group in the street it skidded into the plaintiff, crushing her against a parked automobile. In reviewing these facts, the court said: "These facts in combination warranted a finding of negligence. . . . The mere skidding of an automobile is not evidence of the negligence of its driver. But skidding may occur in connection with other acts of omission or commission in such circumstances as to support a finding of negligence."

The facts of the instant case are, in this respect, even stronger than in the Massachusetts case. The operator not only knew that his bus was unequipped with chains but he also knew that after he passed Sayles avenue his course would be down-grade on a very slippery street; that a little more than midway down the grade, there was a bus stop where he might have to stop for passengers; that at that stop, there was a curve in the highway and a fall of the highway toward the curb. Yet he continued down this hill in high gear at a rate of speed of fifteen to twenty miles per hour and did not attempt to slow down until he was only 150 to 200 feet from the bus stop. He then, by applying the foot brakes, brought down the speed to eight or ten miles per hour while at the same time, or immediately thereafter, he made a swift or sharp turn toward

the curb, where the plaintiff and her sister were standing. It was then that the bus skidded, causing the rear to overhang the sidewalk and knock down the plaintiff.

There was a conflict in the testimony as to whether the turn was sharp or gradual, but from the evidence the jury would have been warranted in finding that it was a sharp turn, and that this, in connection with the operator's knowledge of the surface conditions of the street, the lack of chains on his bus and the speed at which the bus was traveling downhill, was evidence to support a conclusion of negligent operation of the bus. This is apparently what the jury did, and their finding is consistent with the law and the evidence and the weight thereof.

The defendant's contention that the damages are grossly excessive, it seems to us, is supported by a careful review of the evidence. At the time of the accident the plaintiff was twenty-eight years of age, in sound health, and regularly employed as a spinner in a textile mill at a weekly wage of $25.30. The accident totally incapacitated her for slightly less than seven months or, until July 7, 1931, and her total loss of wages was $616.17. She returned to her employment July 8, 1931, and has been working steadily ever since without any diminution of her earning capacity. Her hospital bill was $202.50, and her medical bills amounted to $166. Her total monetary loss is $984.67.

On the evidence, therefore, it is clear that the excess over and above, at the most, $1000 was awarded to the plaintiff as compensation for her pain and suffering. In our opinion $9000 is grossly excessive for this element of damage. In reaching this conclusion, we are not unmindful of the fact that the jury and the trial justice are in agreement on the amount of these damages, and that both have had the advantage of seeing and hearing the plaintiff testify. In this instance, that advantage has lost some of its value on the question of damages because of the long lapse of time between the accident and the trial, and

because of the substantial recovery which the plaintiff made prior to the trial. The trial occurred over four years subsequent to the time of the accident and her discharge from the hospital and over three years and seven months subsequent to her recovery and return to her work. All outward evidences of plaintiff's injuries, during this long interim, had quite disappeared. Except for occasional severe pains which afflicted her intermittently, and which she attributed to the accident, she had regained her former physical well-being. Only subjectively could the present suffering and past pain of the plaintiff be known to the jury and this knowledge came to them no more strongly as it fell from the lips of the plaintiff on the trial, than to us as we read it on the printed page of the transcript.

We do not doubt for one moment that plaintiff has suffered severe and excruciating pain. We are convinced by the evidence that this pain continued throughout the treatment she underwent and for a considerable period thereafter. She had suffered four complete fractures of the pelvis and complete fractures of three ribs. Her pelvic injuries were so severe that for a long time she lost her power of locomotion and had to be taught to walk again. It would be idle to claim that the pain of such injuries ceased after she was able to get about or even after she returned to work in July 1931. We think that the pain probably diminished very slowly at first but, as the weeks lengthened into months and the months into years, the speed and degree of diminution progressively increased until at the time of the trial we think that, for all practical purposes of compensation, it had ceased to exist. That it was not at the time of the trial absolutely non-existent and will never become so is probably true. But the occasional pain that now intermittently afflicts the plaintiff may reasonably be said to be beyond the scope of legitimate compensation. If the trial justice had observed the evidence somewhat in this light, we think it would have been obvious to him that the jury's award of damages was clearly excessive.

We think the jury must have misconceived the purport of the testimony as to the continuance of the plaintiff's pain and suffering and regarded it as of the same undiminished intensity throughout the long period of her convalescence and down to the very day of the trial, and believed that she would continue to experience such pain. The testimony as to the excruciating character of the pain related only to the period immediately following the accident and during the treatment of the plaintiff at the hospital, and for a limited time after she returned to her home but before she resumed her employment. The date of her return to work July 8, 1931, seven months after the accident, may, we think, be considered the extreme limit of time that she suffered this excruciating pain. In reaching their verdict the jury either failed to thus differentiate the testimony as to pain and suffering or else their award of damages was based upon a feeling of sympathy for the plaintiff. In either event, it cannot stand, and we think the trial justice erred in not examining more closely the basis upon which the award of damages rested. Defendant's exception sixteen must therefore be sustained and the remainder of those last-above enumerated overruled.

What should the compensation be under these circumstances? It is difficult to say just what would be fair compensation. It is impossible to exactly measure it. A reasonable approximation of what is fair compensation under the evidence, and not exactitude, is what is required. Such an approximation would, in our opinion, be the sum of $7,000. This figure allows $6,000 for pain and suffering and more nearly represents fair compensation to the plaintiff for this element of damage without injustice to the defendant.

All of the defendant's exceptions are overruled, excepting exception sixteen, above discussed, and this is sustained on the ground that the damages awarded by the jury are clearly excessive.

The case is remitted to the Superior Court for a new trial, unless the plaintiff, on or before February 12, 1937, shall file in the office of the clerk of the Superior Court, a remittitur of all said verdict in excess of $7,000. In case the plaintiff shall file such remittitur, the Superior Court is directed to enter judgment on the verdict as reduced by the remittitur.

*Hogan & Hogan, Laurence J. Hogan,* for plaintiff.
*Clifford Whipple, Earl A. Sweeney,* for defendant.