## SIEMBAB v. BURGESS EXP. CO., Inc.

### No. 36.

District Court, D. Rhode Island.

Aug. 26, 1941.

Roland E. Meunier, of West Warwick, R. I., for plaintiff.

William A. Gunning, of Providence, R. I., for defendant.

HARTIGAN, District Judge.

Within ten days after the reception of the verdict for the plaintiff on April 17, 1941, in the sum of $15,000, the defendant, having moved for a directed verdict at the close of all the evidence in the trial of said cause, and said motion having been denied, now moves, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to have the verdict and judgment entered thereon set aside and to have judgment entered in accordance with its motion for a directed verdict on the following grounds:

(1) That the evidence was insufficient to determine the net estate of the deceased.

(2) That the evidence of the net worth of the estate of the deceased was of a speculative and conjectural nature and too insubstantial to afford a basis from which the net worth could be calculated by the jury.

(3) There was no evidence introduced in the trial which would warrant a finding of the net worth of the estate of the deceased.

(4) The evidence was too insufficient to submit to the jury the question of the defendant's negligence under any of the counts of the plaintiff's declaration.

Pursuant to the provisions of Rule 59(b), the defendant has also moved for a new trial giving the following reasons:

(1) The evidence is not sufficient to sustain a verdict of substantial damages for the plaintiff.

(2) The weight of the evidence is not sufficient to sustain a verdict for the plaintiff in the sum of fifteen thousand ($15,-000) dollars.

(3) The verdict of the jury is contrary to the evidence of the pecuniary loss to the decedent's estate.

(4) The verdict of the jury is against the evidence.

(5) The verdict of the jury is against the law and the evidence and the weight thereof.

(6) The verdict of the jury is grossly excessive.

(7) The verdict of the jury fails to do substantial justice between the parties.

Other reasons relate to certain alleged errors of law.

On January 21, 1939, about 10:15 p. m., Stanley Siembab, husband of the plaintiff, was killed by a motor vehicle of the trailer-truck type, owned by the defendant and operated by James G. Cavanaugh, an employee of the defendant. At the time of the accident Siembab was acting as a special policeman and was directing the parking of automobiles on private property in front of Hoppy's Tavern, sometimes referred to in the testimony as Hoppy's Cabins and Hoppy's Diner, which was located on the westerly side of Nooseneck

Hill Road in the Town of Coventry in the County of Kent and State of Rhode Island.

Nooseneck Hill Road is a four-lane highway, forty-seven feet in width, and runs approximately north and south. The outer lanes are concrete pavement, each of which is eleven feet wide. Between them are two lanes of macadam pavement of a total width of twenty-five feet. On either side of the concrete pavement are macadam shoulders eighteen inches in width.

The defendant's said motor vehicle was being driven for the first time by Cavanaugh in a general northerly direction on the easterly concrete pavement when at a point approximately one hundred feet south of Hoppy's it veered to the left in order to pass another motor vehicle that had stopped in the easterly concrete lane about opposite Hoppy's Tavern.

The defendant's motor vehicle crossed the other lanes of the road in a general northwesterly direction, the brake marks making sweeping arcs, and continued into the gravel driveway in front of Hoppy's, struck and killed Siembab who was directing the parking of automobiles. It also struck automobiles parked in that area, piled upon two or three of them, and came to a stop after crashing into Hoppy's Tavern, the front of which was approximately sixty feet from the westerly highway line.

There was testimony that Siembab tried to run toward a field to avoid the oncoming truck, the speed of which was estimated by one witness as thirty to thirty-five miles per hour.

The night was clear, the easterly cement pavement was clear and dry, although there is also some testimony describing it as being damp and wet. The macadam pavement was covered with hard packed snow or ice. The road opposite Hoppy's was practically level and straight with a slight curve to the north. About a quarter of a mile to the south there is a slight hill.

The defendant's truck left New York in charge of its regular driver, Anthony J. Fisette, with whom Cavanaugh was deadheading back after having driven another truck to New York on the previous night. At Saybrook, Connecticut, Cavanaugh began to operate the truck and he testified that when he saw the automobile ahead of him on the concrete pavement slow down about opposite the diner, he turned to the left, "fanned" the brakes, and then put them on hard when he saw the automobile ahead stop. He said that as he turned to his left and applied the brakes the truck skidded across the highway; the brakes locked and he tried to fan them off to release them but he was unable to unlock them. He said he saw a man, later identified as Siembab, running in front of Hoppy's before the truck struck him. Cavanaugh, after alighting from his truck, looked for Siembab and found him underneath the truck apparently dead.

The weight of the defendant's tractor and trailer truck was given as eight and one-half tons and carried an eight-ton load.

Cavanaugh testified he turned the truck when about one hundred feet from the automobile ahead in order to pass it; that he was travelling twenty-five miles per hour at the time; that he felt skidding when in the second lane and that the brakes locked when he pushed them to the floor.

Fisette testified that it was his duty to drive the truck.

Siembab, thirty-three years of age with a life expectancy of thirty-two years, was an extractor operator in a mill where he earned fifty-nine and one-half cents per hour or about twenty-three to twenty-four dollars per week. For overtime he was paid time and a half. He was described as a steady employee, a good worker and steady as to his habits. He was a fair sized man of the rugged type and enjoyed very good health.

He was also a barber and earned four to five dollars per week doing that work at his home. He received three dollars for working Saturday nights and holidays at Hoppy's, five dollars for July 3rd, and in addition received tips from persons parking cars. The town of Coventry in 1938 paid him twenty dollars for services as a special duty officer.

The testimony disclosed the following weekly expenses of Siembab for himself and family: two dollars and fifty cents for rent; twelve dollars for groceries; one dollar and eighty-two cents for milk. He spent about thirty-six dollars per year for fuel; thirty-five dollars for clothes for himself and twenty-six dollars and forty cents for insurance. He paid about one dollar and fifty cents monthly for electricity. Mrs. Siembab testified that she paid the household expenses and gave her

husband two dollars per week for spending money.

The jury found for the plaintiff on the second count of the declaration which substantially alleged that the defendant carelessly, negligently and recklessly operated its motor vehicle at a rate of speed greater than was reasonable and proper under the circumstances.

On the facts as above outlined, it is clear that the question of the defendant's negligence was for the jury and for the jury to say whether or not the conduct of the defendant's agent was that of a reasonable and prudent operator of a motor vehicle under all the surrounding circumstances. Peters v. United Electric Rys. Co., 57 R.I. 311, 315, 189 A. 901, Luiz v. Ingram, 57 R.I. 428, 190 A. 439.

The Giauque-McClure annuity tables were admitted without objection on the part of the defendant to assist the jury in arriving at the pecuniary value of the life of the deceased.

In Reynolds v. Narragansett Electric Lighting Co., 26 R.I. 457, 461, 59 A. 393, 394, the court said: "Standard life and annuity tables, showing at different ages the probable duration of life and the present value of a life annuity, have been held to be competent evidence." (Cases cited).

In McCabe v. Narragansett Electric Lighting Co., 26 R.I. 427, at 434, 59 A. 112, 115, the court said:

" * * * When the fact of liability is established, the question of damages becomes as nearly a question of arithmetical computation as the circumstances of the case as disclosed by the evidence will premit; and consequently the rule of damages differs from that which obtains in other tort actions—such, for example, as slander, libel, assault, and false imprisonment.

"It is obvious, too, that the loss sustained by the plaintiff here is the present value of the net result remaining after his personal expenses are deducted from his income or earnings. To ascertain this, it is, of course, necessary to ascertain first the gross amount of such prospective income or earnings; then to deduct therefrom what the deceased would have to lay out, as a producer, to render the service or to acquire the money that he might be expected to produce, computing such expenses according to his station in life, his means and personal habits; and then to reduce the net result so obtained to its present value." (Cases cited)

In Sebille et al. v. Dunn, Sup.Ct. R.I. Feb. 20, 1917, 99 A. 831, at 832, the court, in referring to the first paragraph quoted in the McCabe case supra, said: "The clear meaning of the language of the court above quoted seems to be that the lack of accurate figures should not in such cases preclude a recovery, provided the testimony furnishes sufficient material from which a reasonably fair computation can be made."

The award of the jury is based on sufficient material from which a reasonably fair computation can be made and is not based on speculation and conjecture.

In the case of Barry v. Edmunds, 116 U.S. 550, at 565, 6 S.Ct. 501, 509, 29 L.Ed. 729, the court said: "In Whipple v. Cumberland Manufacturing Co. [Fed.Cas. No. 17,516], 2 Story 661, 670, Mr. Justice Story well expressed the rule on this subject that a verdict will not be set aside in a case of tort for excessive damages 'unless the court can clearly see that the jury have committed some very gross and palpable error, or have acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which the damages are to be regulated,'— that is, 'unless the verdict is so excessive or outrageous,' with reference to all the circumstances of the case, 'as to demonstrate that the jury have acted against the rules of law, or have suffered their passions, their prejudices, or their perverse disregard of justice to mislead them.' * * * *"

It is my opinion, based on my observation of the witnesses and the weight given their testimony that I would have no hesitancy in finding for the plaintiff and it is my independent judgment that the verdict of the jury for the sum of $15,000 is not excessive and is supported by a fair preponderance of the evidence and does substantial justice between the parties.

The defendant's motions for a directed verdict and for a new trial are denied. It is so ordered.