Max FISHLER and Joaquin del Rio, Plaintiffs,

v.

TWENTIETH CENTURY–FOX FILM CORPORATION, a California corporation, Defendant.

Civ. No. 19102.

United States District Court
S. D. California,
Central Division.
Feb. 7, 1958.

216

Jerome Weber, Reuben Rosensweig, and Jack Altman, Los Angeles, Cal., for plaintiff.

Musick, Peeler & Garrett, Harold F. Collins and John P. Pollock, by Harold F. Collins and John P. Pollock, Los Angeles, Cal., for defendant.

TOLIN, District Judge.

The Complaint pleads two causes of action. Each is an alternate way of stating the same claim. Plaintiffs contend that they are the authors of a play based on the life of Queen Elizabeth and entitled "Virgin Queen". They contend that because of the widespread distribution of their play among the trade, that the title "Virgin Queen" has acquired secondary meaning, to wit, that among writers, producers, actors, and others associated with the motion picture and theatrical producing, exhibiting and viewing fields, there was a secondary meaning to the words "virgin queen", that secondary meaning being that it was the title of the play or story written by plaintiffs. The gist of each cause of action is that the use of said title in the motion picture industry by defendant was in derogation of plaintiffs' property rights therein. Plaintiffs claimed that their authorship was completed on the 5th of April, 1953, and that on the 23rd of April, 1953, a letter was sent to all the major motion picture studios including that of defendant informing the studios that the plaintiffs have written a play entitled "Virgin Queen". Plaintiffs' play was never performed and has not been the subject of more than very slight publicity. The alleged violation of plaintiffs' property rights in said title was the release by defendant for public distribution of a motion picture produced by defendant and bearing the title "The Virgin Queen". Said motion picture was released for public distribution on or about the 5th of August, 1955. There is no claim that the play of plaintiffs has been appropriated. The two causes of action are based upon plaintiffs' supposed ownership of the title of their play or story.

The legal principles involved are so well established that it will suffice

to quote from one of the leading California[1] Supreme Court decisions[2]:

"[1] An author of a play has no inherent right in the title to his production. Paramore v. Mack Sennett, Inc., D.C., 9 F.2d 66, 67; Martenet v. United Artists Corp., D.C., 56 F. Supp. 639, 640. Only when the title has acquired a secondary meaning identifying it in the public mind with the play is he entitled to its exclusive use. Warner Bros. Pictures v. Majestic Pictures Corp., 2 Cir., 70 F.2d 310, 311; Amusement S. Corp. v. Academy Pictures D. Corp., 162 Misc. 608, 294 N.Y.S. 279; see Nims, Unfair Competition and Trade Marks [4th Ed. 1947], § 274–a. Therefore, regardless of any deliberate use by Universal of 'Slightly Scandalous' with knowledge of Jackson's prior use, he is not entitled to damages unless his literary product had acquired a secondary meaning.

"[2] There is no initial property right in household semantics or words which are merely descriptive, fanciful or geographic in nature. G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, 373, 117 C.C.A. 245. However, if words have been used by an author or manufacturer in such a manner that the public has learned to associate them with the product, book or play, they acquire a 'secondary meaning'. This principle, which was first applied in trademark cases, renders the words or symbols protectible and transferable because of that association. A play may become known to the public by its title, which thereby acquires a secondary meaning and attains a protectible status. Manners v. Triangle Film Corp., 2 Cir., 247 F. 301, [159 C.C.A. 395]; Hemingway v. Film Alliance of United States, Inc., 174 Misc. 725, 21 N.Y.S.2d 827.

"In Johnston v. Twentieth Century-Fox Film Corp., 82 Cal.App.2d 796, 813, 187 P.2d 474, 484, the court stated, 'The question whether a title has acquired a secondary meaning is one of fact.' Other decisions to the same effect are International Film Service Co., Inc. v. Associated Producers, Inc., D.C., 273 F. 585; Bayer Co. v. United Drug Co., D.C., 272 F. 505, 509; Saland v. Monogram Pictures Corp., Sup., 67 N.Y.S.2d 436; Hemingway v. Film Alliance of United States, Inc., 174 Misc. 725, 21 N.Y.S.2d 827. The Restatement of the Law of Torts, in stating this rule, adds: 'No particular period of use is required.' (Sec. 716b.)"

The title of both plaintiffs' play and defendant's motion picture is so well known independently of either production that it is commonly associated by even moderately educated people with the history of the particular Queen who is the subject of both plays. Aside from this historical meaning the evidence discloses that the words "Virgin" and "Queen" have meanings to the uneducated public, none of the meanings bringing to mind plaintiffs' play. While it is true that a 'very well-known word or group of words mights acquire a secondary meaning, it is equally true that if the primary meaning is strong the acquisition of secondary meaning requires greater association of the words to the secondary meaning than if the primary meaning be but little known.

The evidence in this case shows some effort by plaintiffs to acquaint persons in the motion picture industry with their production. The effort was not notably successful and although plaintiffs worked diligently in

1. Jurisdiction of this Court is based upon diversity of citizenship and this Court must follow the law of California. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed.

2079. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

2. Jackson v. Universal International Pictures, Inc., 36 Cal.2d 116, 222 P.2d 433, 436.

their efforts, said efforts were fruitless. The Court is convinced that none except the plaintiffs and their immediate agents ever associated the title "Virgin Queen" with plaintiffs' play. To create a secondary meaning there must be the establishment of more knowledge of the title and association of it with the author's product than plaintiffs have shown in this case.

It is ordered that the plaintiffs take nothing by their action and that defendant have judgment for its costs.

Counsel for defendant may submit findings of fact, conclusions of law and judgment accordingly.